**Larry L. LOPER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 204, 2010.**

Supreme Court of Delaware.

Submitted: Oct. 6, 2010.

Decided: Nov. 19, 2010.

Court Below Superior Court of the State of Delaware in and for New Castle County, Cr. I.D. No. 0901005714.

John S. Malik, Esquire, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

Larry L. Loper ("Loper"), the defendant below, appeals from the Superior Court's denial of his motion to suppress evidence, and his subsequent conviction for trafficking in phencyclidine (PCP) over 100 grams,[1] possession with intent to deliver PCP,[2] use of a vehicle for keeping controlled substances,[3] and possession of drug paraphernalia.[4] On appeal, Loper claims that the Superior Court erred in denying his suppression motion, because the State did not establish a reasonable and articulable suspicion of criminal activity sufficient to justify the police stopping and questioning him. We find no error and affirm.

---

1. 16 *Del. C.* § 4753A(a)(6)(c).

2. 16 *Del. C.* § 4752.

3. 16 *Del. C.* § 4755(a)(5).

4. 16 *Del. C.* § 4771.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 2009, Officer Steven P. Cancila stopped Loper for speeding in the 900 block of West 2nd Street in Wilmington, Delaware. Officer Cancila asked Loper to produce his driver's license, vehicle registration, and insurance card. Loper did that; however, his insurance card had expired on December 21, 2008. Officer Cancila also requested identification from Loper's passenger, who first responded that he had no identification. Loper then told Officer Cancila, "He is a juvenile, sir." The passenger then told Officer Cancila that he was seventeen years old, that his name was "Scott Stevens," and that his date of birth was January 1, 1991. As Cancila was documenting the passenger's response in his police notebook, the passenger then told him that his real name was actually Faheem Kennedy, and that he had an outstanding warrant "for curfew."

Officer Cancila conducted a DELJIS check, and found an active outstanding capias for Kennedy for criminal impersonation. Cancila immediately requested additional assistance, because he intended to make an arrest. After Officer John Santiago arrived, Cancila told Santiago that Kennedy had an outstanding warrant, and that the driver (Loper) was acting suspiciously.

Officer Santiago asked Loper to exit the car when Officer Cancila arrested Kennedy, and Loper did so. Santiago then asked Loper if he had "anything illegal" on his person. Loper responded that he had some "weed" in his front pocket. Santiago reached into Loper's front pocket and retrieved a bag containing twenty-two plastic vials of what appeared to be marijuana. Santiago also found, in Loper's pocket, a small bottle containing yellow liquid, which (Loper told Santiago) was codeine. Loper was then arrested. During a search of the car incident to the arrest, Santiago found a second bottle of yellow liquid. Laboratory tests later identified the yellow liquid in both bottles as PCP.

On October 27, 2009, Loper moved to suppress the evidence obtained as a result of the pat down search. At the suppression hearing, a Superior Court judge denied Loper's motion after hearing testimony from Loper, Santiago, and Cancila. The Superior Court ruled that the officers had a reasonable and articulable suspicion to stop and search Loper because: (i) Loper's volunteered statement about "weed" constituted a consent to the search; (ii) even if Loper did not consent, the police had a reasonable and articulable suspicion that Loper was engaged in criminal activity when Kennedy gave Officer Cancila a false name and Loper told Cancila that Kennedy was a juvenile; (iii) the police had probable cause to arrest Kennedy and to detain Loper, because Loper's insurance card had expired and Kennedy had an outstanding capias; and (iv) the police had a basis to search Loper's person after Loper volunteered that he had "weed" on his person. After a bench trial, Loper was convicted of trafficking in PCP over 100 grams, possession with intent to deliver PCP, use of a vehicle for keeping a controlled substance, and possession of drug paraphernalia. This is Loper's direct appeal from those convictions.

## ANALYSIS

On appeal, Loper claims that the Superior Court erred in denying his suppression motion, because the evidence was the fruit of an illegal search and seizure in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States, and Article I, Section 6 of the Delaware, Con-

stitutions.[5] Loper argues that the police: (i) did not have a reasonable and articulable suspicion to detain him after making the initial traffic stop, (ii) failed to give *Miranda* warnings before questioning him, and (iii) had neither a reasonable suspicion that he was armed, nor his consent, to justify conducting a *Terry* pat down search. Loper also asserts that even if his statement about carrying "weed" amounted to consent to a search, that consent was still invalid because he was illegally detained.

■■■ This Court reviews a Superior Court denial of a motion to suppress for abuse of discretion.[6] Questions of law are reviewed *de novo*,[7] and questions of fact are reviewed for "clear error."[8]

I. *Did the Police Have Reasonable And Articulable Suspicion to Detain Loper Beyond The Initial Traffic Stop?*

Loper claims that the Superior Court erred in denying his suppression motion, because the police did not possess a reasonable and articulable suspicion to detain him beyond the initial traffic stop. Loper concedes the legality of the initial traffic stop,[9] but contends that the follow-up search and seizure exceeded the scope of the initial traffic stop and, therefore, was unreasonable. Loper advances three arguments to support that claim. First, he argues that Officer Cancila exceeded the scope of the traffic stop investigation by asking Loper's passenger (Kennedy) to identify himself and then performing a background check. Second, Loper contends that even if the police were entitled to question Kennedy, Loper's detention was unreasonably prolonged by Kennedy's arrest. Third, Loper claims that the evidence seized was the result of a warrantless search and seizure accomplished without reasonable suspicion or consent.

A. *The Police Did Not Exceed The Scope Of The Traffic Stop*

■ Loper's first claim, that Officer Cancila exceeded the scope of the initial traffic stop by questioning Kennedy, runs as follows: Had Cancila not questioned Loper's passenger, the police would have never discovered the PCP on Loper's person or in his car. Because the police had no right to question Kennedy, the evidence ultimately seized as a result of searching Loper should have been suppressed. Loper's argument fails, because he cannot show that by questioning Kennedy, the police exceeded the scope of the traffic stop or acted unreasonably under the circumstances. The United States Supreme Court has observed that during a routine traffic stop, all passengers are subject to

---

5. Although Loper raises claims under both the U.S. and Delaware Constitutions, he has not fully and fairly presented his Delaware constitutional claim. *See infra* at Section I.C. *See also Jenkins v. State*, 970 A.2d 154, 158 (Del.2009) (holding that "[t]o present properly an alleged violation of the Delaware Constitution, a defendant must discuss and analyze one or more of the following non-exclusive criteria [as set forth in *Jones v. State*, 745 A.2d 856, 864–65 (Del.1999)]: 'textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions, and

public attitudes.'"); *Ortiz v. State*, 869 A.2d 285, 290–91 (Del.2005) (same). We, therefore, decline to address that claim.

6. *Woody v. State*, 765 A.2d 1257, 1261 (Del. 2001).

7. *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008).

8. *Woody*, 765 A.2d at 1261.

9. Loper admitted that he was speeding when he was stopped by the police.

some scrutiny.[10] This Court has also held that during a routine traffic stop, the police may question a passenger about his or her identity, and that those questions are not beyond the scope of a reasonable investigation.[11] Accordingly, the trial judge properly held that Officer Cancila did not exceed the permissible scope of a routine traffic stop by asking Loper's passenger for identification and then running a background check.

**B.** *Loper's Detention Was Not Unreasonably Extended*

■ Loper next contends that even if the police did not err in questioning Kennedy during the traffic stop, the police unreasonably extended Loper's detention when they arrested Kennedy. This argument lacks merit, because the delay caused by Kennedy's arrest was not unreasonable. Once Kennedy gave the police his name and birth date, Officer Cancila promptly ran a background check. He then immediately called for assistance upon learning that Kennedy had an active outstanding capias on a criminal impersonation charge. Officer Santiago arrived at the scene two or three minutes later. If Loper's detention was delayed by Kennedy's arrest, any delay was *de minimis* and not unreasonable.[12] The Superior Court did not abuse its discretion in denying Loper's suppression motion on this ground.

**C.** *The Search and Seizure Of The PCP Vials Was Valid*

Loper next claims that the police lacked both a reasonable suspicion and his consent to conduct a warrantless search and seizure of his person and his car. Therefore, he urges, the seized evidence should have been suppressed.

**1.** Loper's Claim That There Was A Second Seizure

Loper contends that his detention after Kennedy's arrest constituted a second seizure that was not independently supported. Stated differently, Loper argues that a second "seizure" occurred when Officer Santiago ordered him to exit his car, thereby initiating another investigation beyond the initial traffic stop. Loper claims that because only the facts existing at the time of the seizure are relevant to a "reasonable suspicion" analysis, the trial court should not have considered the PCP found during the second seizure in determining whether the police had a reasonable and articulable suspicion to conduct the first search and seizure. Loper relies on *Jones v. State*, where this Court held that Article 1, § 6 of the Delaware Constitution provided greater protection than its Fourth Amendment counterpart and that a "seizure" occurs only if, viewing the totality of the circumstances, a reasonable person

**10.** *Brendlin v. California*, 551 U.S. 249, 257, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) ("[E]ven when the wrongdoing is only bad driving, [a] passenger will expect to be subject to some scrutiny....").

**11.** *Mills v. State*, 900 A.2d 101 (Table), 2006 WL 1027202, at *2 (Del.2006) ("[Q]uestions concerning a suspect's identity are a routine and accepted part [of an investigatory stop].") (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)).

**12.** *Howard v. State*, 931 A.2d 437 (Table), 2007 WL 2310001, at *3 (Del.2007) (holding that a 40–minute delay in waiting for the arrival of a drug dog was not unreasonable following a routine traffic stop); *Bunting v. State*, 860 A.2d 809 (Table), 2004 WL 2297395, at *2 (Del.2004) (concluding that a 13–hour detention was not unreasonable because the police had probable cause to believe that the defendant had committed a criminal offense following his initial detention).

would have believed he was not free to ignore police presence.[13]

 Loper's reliance on *Jones* is misplaced. In *Jones*, the police did not have a reasonable and articulable suspicion when they limited the defendant's mobility by ordering him to stop. The police suspicions were triggered by Jones' refusal to obey their order to stop, and his repeated attempts to leave.[14] Here, however, at the time Officer Santiago ordered Loper out of the car, Loper was already lawfully detained as a consequence of the valid traffic stop. Loper's mobility having already been validly limited, he was not subject to a "second seizure" when the police ordered

him to exit his car. As the United States Supreme Court held in *Pennsylvania v. Mimms*, the police may order the driver or a passenger to exit the car after a valid traffic stop, and that order is not a "seizure" under the Fourth Amendment.[15] Loper has cited no authority, nor made any cogent legal argument, for why this Court should expand the meaning of "seizure" under *Jones* and Article 1, § 6 of the Delaware Constitution, to hold that a person already being lawfully detained as a result of a valid traffic stop is "seized" a second time when ordered to leave his car.[16] The constitutional claim, therefore, fails.

13. *Jones v. State*, 745 A.2d 856, 866–69 (Del. 1999) (rejecting the United States Supreme Court's definition of "seizure" in *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), which requires "either physical force … or … submission to the assertion of authority," and concluding that "[i]n our view, the question presented by Jones of when a seizure has occurred under Article I, § 6 of the Delaware Constitution requires focusing upon the police officer's actions to determine when a reasonable person would have believed he or she was not free to ignore the police presence."); *Robertson v. State*, 596 A.2d 1345, 1351 (Del.1991) ("[T]he police can be said to have seized an individual only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

14. *Jones*, 745 A.2d at 859. In *Jones*, the police had received an anonymous tip reporting that a "suspicious black male wearing a blue coat" had been standing in front of a public park for some time. *Id.* at 858. When the police approached Jones, instead of asking him for his name and identification as required under 11 *Del. C.* § 1902, the officers ordered Jones to "stop and remove his hands from his coat pockets." *Id.* at 859. We concluded that at the time the officers made a showing of their authority and ordered Jones to stop, he had been "seized" within the

meaning of Article I, § 6 of the Delaware Constitution, even though the police had not used actual force to stop Jones. *Id.* at 863–69.

15. *Pennsylvania v. Mimms*, 434 U.S. 106, 107–11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In *Mimms*, the police ordered the defendant to exit the car after a valid traffic stop. *Id.* at 107, 98 S.Ct. 330. The Supreme Court weighed the interest of the driver's personal liberty against the safety of the police officer, and held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable search and seizure." *Id.* at 111 n. 6, 98 S.Ct. 330. *See also Maryland v. Wilson*, 519 U.S. 408, 413–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (holding that a police officer making a traffic stop may order passengers to exit the car pending completion of stop).

16. Our case law suggests otherwise. *See, e.g., Dunlap v. State*, 812 A.2d 899 (Table), 2002 WL 31796193, at *2 (Del.2002) (holding that the police acted reasonably where, after stopping the defendant for driving under 10 mph in a 25 mph zone and weaving, they ordered the defendant to exit the vehicle); *Caldwell v. State*, 780 A.2d 1037, 1045 n. 27 (Del.2001) (recognizing that under the Fourth Amendment, the police can order a driver and his or her passengers to exit the car during the course of a valid traffic stop).

■ Even assuming, *arguendo*, that a second "seizure" occurred when the police ordered Loper to leave his car, the seizure was reasonable. Loper relies on *Caldwell v. State*.[17] In *Caldwell*, the police approached the defendant, who was illegally parked in a fire lane. They ordered him to exit his car immediately after obtaining his license and registration information.[18] Rather than continue to question the passengers in Caldwell's car, the officer frisked and handcuffed Caldwell and detained him until another officer arrived.[19] In those circumstances, we concluded that a second "seizure" had occurred, because the officer's actions exceeded the permissible scope of the initial traffic stop, and the police lacked additional facts sufficient to justify the second "seizure." [20]

Here, in contrast, Officers Santiago and Cancila questioned Loper and Kennedy, and received suspicious responses, before they ordered Loper to exit the car. Loper provides no support for his claim that giving the police a false identify and age does not raise a reasonable and articulable suspicion under the Fourth Amendment.[21] The Superior Court did not err in holding that, in the totality of the circumstances, there was reasonable suspicion sufficient to support a search and seizure.[22]

### 2. Loper's Claim That He Did Not Give Consent

■ Loper next contests the Superior Court's conclusion that he had voluntarily told the police that he was carrying "weed." Alternatively, Loper argues, even if his statement was voluntary it was not a "consent" to search his car. Whether consent was given to a police search is a question of fact to be determined from the totality of the circumstances.[23] Absent a reasonable and articulable suspicion that Loper was engaged in criminal activity, the consent must be voluntary to justify a warrantless search and seizure.[24] After

17. *Caldwell*, 780 A.2d 1037.

18. *Id.* at 1049.

19. *Id.*

20. *Id.*

21. *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979) (noting that a defendant bears the burden of establishing that the search and seizure violated his Fourth Amendment rights).

22. There does not seem to be any Delaware case law on whether a passenger's false identification or age can raise a reasonable suspicion sufficient to justify a seizure of the driver. There are cases holding that a driver's false identity or false claim of age can raise a reasonable suspicion. *See, e.g., Whiteley v. Warden*, 401 U.S. 560, 573–74, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (Black, J., dissenting) (noting that police had reasonable suspicion to believe that the defendant was lying and attempting to escape when the defendant reported a false name); *United States v. Shabazz*, 993 F.2d 431, 433 (5th Cir.1993) (driver's false identity and inconsistent stories are enough to raise reasonable suspicion); *Barrow v. State*, 749 A.2d 1230, 1241 n. 8 (Del. 2000) (defendant gave a false name and address when questioned by police; court held that the police had reasonable suspicion based on the defendant's evasiveness and because he matched the description of a wanted suspect). Here, however, Loper's expired insurance card could be taken into consideration in determining whether there was reasonable suspicion. *See United States v. Hunnicutt*, 135 F.3d 1345, 1349–50 (10th Cir. 1998) (suspended license, no insurance card nor proof of authority to use the car, nervous behavior, and inconsistent responses are enough to raise reasonable suspicion).

23. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Huntley*, 777 A.2d 249, 257 (Del.Super.Ct.2000).

24. *Bustamonte*, 412 U.S. at 248–49, 93 S.Ct. 2041.

hearing testimony and weighing the witnesses' credibility, the trial judge concluded that Loper's response-that he had "weed" on his person, when asked "if he had anything illegal on himself,"—was voluntary. That factual finding is not clearly erroneous.

## II. Did The Police Fail to Give Loper A Miranda Warning?

■ Loper's second claim of error is that the police violated his constitutional rights, because they did not give him a Miranda[25] warning before questioning him. Loper argues that because a reasonable person would not feel free to ignore the presence of a police officer, he was "in custody" when ordered to exit his car. Therefore, when the police asked Loper whether he had anything "illegal" on him, that constituted an interrogation which required a Miranda warning.

■ For Miranda to apply, the defendant must be: (i) in custody or in a custodial setting, and (ii) the questioning must rise to the level of an interrogation.[26] Loper's Miranda claim cannot succeed because he was not "in custody" when being questioned. A person is "in custody" when, considering the totality of the circumstances, "a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with formal arrest' to such an extent that he would not feel free to leave."[27] In Berkemer v. McCarty, the police stopped the defendant after observing his car weave in and out of a highway lane, and ordered the defendant to exit his car.[28] An officer asked the defendant whether he was intoxicated without first giving him Miranda warnings.[29] The defendant replied that he had consumed two beers and had smoked marijuana.[30] The defendant later claimed that his Fifth Amendment rights had been violated and moved to suppress the evidence.[31] The United States Supreme Court held that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for purposes of Miranda."[32] Berkemer is dispositive here. Even if Loper did not feel free to leave when being asked to exit his car, his Miranda argument gains no traction because he was not "in custody."

## III. Was The Police's Terry Search Proper?

Loper's final claim is that the Superior Court erred in denying his suppression motion, because the police conducted a Terry[33] pat down search of his person

**25.** Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**26.** McAllister v. State, 807 A.2d 1119, 1125–26 (Del.2002) (emphasizing that both "custody" and "interrogation" are required for Miranda to apply); see California v. Hodari D., 499 U.S. 621, 624–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (explaining the meaning of "custody"); Rhode Island v. Innis, 446 U.S. 291, 299–302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (explaining the "interrogation" requirement).

**27.** McAllister, 807 A.2d at 1126 (citing Torres v. State, 608 A.2d 731 (Table), 1992 WL 53406, at *2 (Del.1992)).

**28.** Berkemer v. McCarty, 468 U.S. 420, 423, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

**29.** Id.

**30.** Id.

**31.** Id. at 424, 104 S.Ct. 3138.

**32.** Id. at 440, 104 S.Ct. 3138.

**33.** Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

without his consent or any articulable basis to suspect that he was involved in criminal activity or that he possessed a weapon. Alternatively, Loper contends that even if he voluntarily told the police that he had "weed," that admission did not cure the absence of a reasonable and articulable suspicion to detain him after the initial traffic stop.

Loper's claim fails for want of a factual predicate. After reviewing the evidence, the Superior Court concluded that Loper had not been subjected to a pat down search—a conclusion that Loper has not shown is erroneous. We will not disturb the trial court's factual findings absent clear error.[34]

Nor was Loper's consent tainted. Loper relies on *State v. Heath* to support his legal argument that where a person who is illegally detained consents to a search, that consent is deemed tainted by the illegal detention, and is therefore ineffective to justify the subsequent search.[35] Loper's argument is without merit. As earlier discussed, the initial traffic stop and the subsequent investigation were constitutionally valid. Therefore, they could not have "tainted" Loper's voluntary consent. The trial court did not abuse its discretion by denying Loper's suppression motion on this basis.

### CONCLUSION

The judgments of the Superior Court are affirmed.

---

34. *Woody v. State,* 765 A.2d 1257, 1261 (Del. 2001).

35. *State v. Heath,* 929 A.2d 390, 411 (Del.Super.Ct.2006).