# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
)
)
v. ) ID No. 1503012316
)
)
CHARLES HOWARD, )
)
)
Defendant. )
)

## ORDER

On this 16th day of November, 2015, **IT IS ORDERED** as follows:
Defendant's Motion to Suppress is **DENIED**.


John S. Taylor, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for the State of Delaware.

Beth D. Savitz, Esquire, Assistant Public Defender, Public Defender's Office, Wilmington, Delaware. Attorney for the Defendant.


**Scott, J.**

## Introduction

Before the Court is Defendant Charles Howard's ("Defendant") Motion to Suppress, brought by counsel. Defendant argues that he was searched and seized in violation of his Fourth Amendment rights, pursuant to an illegal traffic stop. The Court has reviewed the parties' submissions and held a suppression hearing. For the following reasons, the Defendant's Motion to Suppress is **DENIED.**

## Findings of Fact

On March 19, 2015, Corporal William Draper of the Wilmington Police Department ("WPD") was monitoring the Downtown Visions cameras. While monitoring the video feed of the 900 block of North Pine Street, Cpl. Draper observed a grey Ford Explorer with tag number XC743894. He also observed a black male, wearing red sneakers, a grey sweatshirt, and blue jeans, repeatedly go in and out of the grey vehicle. Finally, Cpl. Draper observed the individual engage in conduct, which was in his training and experience, consistent with hand to hand drug transactions.

Cpl. Draper advised Officers Patrick Malloy and Kevin Lubeck of WPD what he observed. The officers drove to the Explorer's location. As they arrived, the vehicle was pulling away. The officers followed, calling in

to the Data Center for a registration inquiry on the vehicle's temporary tag. The Data Center ran the tag through DELJIS and informed the officers that there was no record for the listed registration.

The officers activated their lights and pulled over the vehicle. Upon approaching the vehicle, one officer requested the occupants' pedigree information. The driver was identified as Desdani Leatherburry. It was later discovered that the vehicle's temporary registration was valid and the vehicle was registered to Ms. Leatherburry's father.

Officer Malloy approached the front passenger, Defendant Charles Howard, who Officer Malloy observed was wearing the same clothing as described to him by Cpl. Draper. Defendant initially gave his name as Derrick Johnson, with a date of birth of August 6, 1992. When that named returned invalid in DELJIS, Defendant was asked to step out of the vehicle and Officer Malloy asked Defendant for his name again. This time Defendant gave his correct name and date of birth. Defendant was arrested for the criminal charge of Criminal Impersonation and then patted down by Officer Malloy.

Contraband was found on Defendant's person during the search incident to his arrest. Officer Malloy testified that the vehicle was then towed to WPD based on Cpl. Draper's observations of apparent contraband

in the vehicle, which was indicative of a large quantity of drugs. Both Ms. Leatherburry and Defendant were detained and taken back to the police station. At the police station, the officers found additional contraband in the vehicle pursuant to a search consented to by Ms. Leatherburry.

## Parties' Contentions

Defendant argues that the officers lacked probable cause to stop the vehicle because the vehicle's temporary registration was valid, and that but for that illegal stop of the vehicle, the officers would not have gotten to the point of asking for Defendant's name or discovering the capiases pending for Defendant's arrest. As such, Defendant argues that any evidence or information after the stop was unlawfully obtained.

Defendant also argues that the officers extended the stop longer than was necessary to determine if there had been a violation of the motor vehicle code. Defendant asserts that questioning and detaining him was not part of finding out whether or not the vehicle was properly registered.

Defendant argues further that the vehicle search at the traffic stop was illegal because Defendant was already removed from the vehicle and in custody. Thus, Defendant asserts that the search subsequent to that unlawful search is also unlawful.

4

Finally, Defendant argues that his detention was illegal from its inception, and that the subsequent searches were tainted by illegality of the detention. Defendant argues that, for these reasons, any evidence seized from him should be suppressed as fruit of the poisonous tree.

The State argues first that the officers had reasonable suspicion to stop the vehicle. The State also argues that the stop was valid, despite the later discovery that the vehicle's registration was valid. The State further argues that the officers were allowed to request all passengers' pedigree information. Finally, the State argues that Defendant had no expectation of privacy in the vehicle..

## Discussion

An individual's right to be free from unreasonable governmental searches and seizures is secured by the Fourth Amendment of the United States Constitution.[1] The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...."[2]

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by reasonable suspicion or probable cause to believe that a traffic

---

[1] *See Terry v. Ohio,* 392 U.S. 1, 8 (1968); *Quarles v. State,* 696 A.2d 1334, 1336 (Del. 1997).
[2] U.S. Const. Amend. IV.

5

violation has occurred."[3] Even if it is later determined that there was in fact no violation, an officer's mistake as to an objective fact at the time of the stop may still be properly considered in determining whether the officer had reasonable suspicion.[4]

Moreover, the scope and duration of the detention must be reasonably related to the initial justification for the traffic stop.[5] During a routine traffic stop, all passengers are subject to some scrutiny.[6] The Delaware Supreme Court has held that during a routine traffic stop, the police may question a passenger about his or her identity, and that those questions are not beyond the scope of a reasonable investigation.[7]

A person only has standing to challenge evidence seized as a result of a violation of one's own constitutional rights.[8] The petitioner must demonstrate his own "legitimate expectation of privacy in the invaded place" before he may challenge the validity of a search or seizure.[9] For purposes of protection under the Fourth Amendment, automobiles are

---

[3] *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010), *aff'd* 30 A.3d 782 (Del. 2011) (citations omitted).
[4] *King v. State*, 984 A.2d 407 (TABLE), 2006 WL 453210 (Del. Feb. 22, 2006).
[5] *Caldwell v. State*, 780 A.2d 1037, 1046 (Del. 2001).
[6] *Brendlin v. California*, 551 U.S. 249, 257 (2007) ("[E]ven when the wrongdoing is only bad driving, [a] passenger will expect to be subject to some scrutiny....").
[7] *Loper v. State*, 8 A.3d 1169, 1173 (Del. 2010) (quoting *Mills v. State*, 900 A.2d 101 (Table), 2006 WL 1027202, at *2 (Del. 2006) ("[Q]uestions concerning a suspect's identity are a routine and accepted part [of an investigatory stop].").
[8] *Mills*, 2006 WL 1027202.
[9] *Wilson v. State*, 812 A.2d 225 (Del. 2002) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).

treated differently than houses.[10] A passenger who does not own or exercise control over a vehicle does not possess a reasonable expectation of privacy in the vehicle in which he is traveling.[11] Therefore, a mere passenger in a vehicle does not have standing to challenge a search.[12] The only standing that the passenger has is in the narrow context of objecting to the seizure of his person.[13]

In *Mills v. State*, the defendant argued that he was illegally detained at the time of the motor vehicle stop and that the fruits of that detention should have been suppressed.[14] The court in *Mills* held that the defendant lacked standing to seek suppression of the fruits discovered as a result of the driver's arrest because the defendant did not own or exercise control over the vehicle, and therefore had no reasonable expectation of privacy in the vehicle's trunk where the evidence was found.[15] Furthermore, the court in *Mills* specifically acknowledged that, while the defendant had "no standing with respect to the stop and search of the vehicle, he [had] standing to object to the circumstances under which his person was seized."[16]

---

[10] *Rakas*, 439 U.S. 128.

[11] *See Mills*, 2006 WL 1027202; *see Rakas*, 439 U.S. 128.

[12] *Id.*

[13] *Jarvis v. State*, 600 A.2d 38, n.1 (Del. 1991).

[14] *Mills*, 2006 WL 1027202, at *1.

[15] *Id.*

[16] *Id.* at *2.

In this case, the Court first addresses the issue of standing. Defendant does not have standing to challenge the traffic stop or the search of the vehicle because he did not own or control the vehicle. The Court finds the facts in this case are substantially similar to those in *Mills*. Here, Defendant has standing to object to the circumstances under which his person was seized, but he has no standing with respect to the stop of the vehicle and evidence found as a result of the vehicle search.[17] The vehicle was driven by Ms. Leatherburry and registered to her father. There is no evidence that Defendant owned the vehicle or exercised control over it. Moreover, Ms. Leatherburry later consented to a search of the vehicle at the police station. Thus, as a passenger in the vehicle, Defendant had no reasonable expectation of privacy inside the vehicle. Accordingly, Defendant has no standing to suppress evidence obtained from the vehicle pursuant to the traffic stop and its consensual search.

Furthermore, the Court finds that the stop was valid because the officers had sufficient reasonable suspicion for the stop. Although it was later discovered that the vehicle's temporary registration was in fact valid, the officers believed there to be no valid registration for the vehicle at the time of the stop. This mistaken belief may still be properly considered in

---

[17] *Mills*, 2006 WL 1027202, at *1; *Jarvis*, 600 A.2d 38 at n.1.

8

evaluating whether there was reasonable suspicion at the time of the stop because the information was an "objective fact" obtained from the DELJIS Data Center.[18] The evidence submitted by the State shows that the vehicle tag was correctly relayed from the officers and received by the Data Center operator.[19] Moreover, there is no evidence to suggest that the Data Center is untrustworthy.[20] It follows then, that the officers reasonably believed at the time of the stop that the vehicle's temporary registration was invalid. As such, it does not matter whether the registration information was, in fact, correct.[21] The information from the Data Center was sufficient to form reasonable articulable suspicion that Ms. Leatherburry was committing a motor vehicle offense, at the time of the stop.[22]

Defendant does, however, have standing to challenge the circumstances under which his person was searched and seized.[23] On this issue, the Court finds that the traffic stop did not exceed its reasonable duration or scope because the police may question a passenger about his identity during a routine traffic stop.[24] Furthermore, the officers had reasonable suspicion for further investigation into Defendant's true identity

---

[18] *See King,* 984 A.2d 407 (TABLE).

[19] State's Response to Defendant's Motion to Suppress. Exhibit A.

[20] *See King,* 984 A.2d 407 (TABLE).

[21] *See Id.*

[22] *See Id.*

[23] *Mills,* 2006 WL 1027202, at *1; *Jarvis,* 600 A.2d 38 at n.1.

[24] *See Loper,* 8 A.3d at 1173.

upon discovering that Defendant had provide the officers with a fake name and date of birth.

Moreover, the Court finds that the officers had probable cause to arrest Defendant for Criminal Impersonation after Defendant admitted to initially giving Officer Malloy a false name and date of birth. As such, Defendant was validly searched incident to that arrest. Accordingly, the evidence found on Defendant's person as a result thereof should not be suppressed.

## Conclusion

For the reasons discussed above, Defendant's Motion to Suppress, is hereby **DENIED.**

**IT IS SO ORDERED.**

_____
Judge Calvin L. Scott, Jr.