IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          :
                           :     I.D. NO.  1510008837
       v.                  :
                           :
JOHN W. MCDOWELL           :
                           :
       Defendant           :

## Order

*Upon Defendant's Motion to Suppress.  Denied.*

**AND NOW TO WIT,** this 31st day of October, 2016, upon consideration of Defendant's Motion to Suppress, **IT APPEARS THAT:**

1.       On January 19, 2016, John W. McDowell ("McDowell" or "Defendant") filed a Motion to Suppress, claiming that (1) his Fourth Amendment rights were violated when he was illegally seized during a traffic stop; and (2) his Fifth Amendment rights were violated when he was subject to custodial interrogation without the benefit of being read his *Miranda*[1] rights. The Court finds that McDowell was not illegally seized during the course of the traffic stop and that he was never in custody, a prerequisite to recitation of *Miranda* rights.  Therefore, Defendant's Motion to Suppress is **DENIED**.

2.       On October 14, 2015, at approximately 3:11 p.m., Cpl. Page of the Delaware State Police Department was traveling southbound on Route One in the area of the Midway Shopping Center in Lewes, Delaware.  He was in the process of responding to an unrelated motor vehicle accident.  While at this location, Cpl. Page noticed that traffic was backing up and found that there was a disabled vehicle in the right travel lane.  He later identified the driver of the stopped vehicle as McDowell.  A passerby had parked behind McDowell's vehicle to render assistance.  When Cpl.

---
[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

Page arrived at the scene the passerby informed him that the vehicle had run out of gas. McDowell motioned to Cpl. Page and then got into his own car.

3. Shortly thereafter, McDowell exited his car. For the first time Cpl. Page approached McDowell; the two began to converse. McDowell and Cpl. Page established that the car had run out of gas, but McDowell was unable to tell Cpl. Page how he knew the car was out of gas. Cpl. Page asked McDowell to get back into the car for his safety, and they continued their conversation with Cpl. Page leaning slightly into the driver's side door to hear McDowell. Cpl. Page testified that at this point he noticed the odor of alcohol on McDowell's breath and observed that McDowell's face was flushed and his eyes were glassy. McDowell was able to tell Cpl. Page where he lived and stated that he was coming from the "food store." However, he was unable to identify which store he had visited. He had bought wine and bread at the store, but when asked where those items were in his vehicle McDowell's only response was "down the door." McDowell stated that his last alcoholic beverage was a glass of wine about a half an hour prior to the stop. Cpl. Page asked whether McDowell was diabetic. McDowell stated that he was not, but shook his head in the affirmative. After clarification, it was clear that McDowell was not diabetic.

4. At 3:18 p.m., Cpl. Page pushed the car while McDowell steered into the bus lane. At this point, Cpl. Page asked McDowell to perform a series of tests, which included: reciting the alphabet from the letter E to the letter P, counting backwards from 87 to 63, asking whether Mickey Mouse is a dog or a cat, and asking what 1,000-3 equals. McDowell was unable to complete any of these tests. When attempting to recite the alphabet he only said the letter E and the letter Y. McDowell was able to count off 87 and 86, but no other numbers. He quickly answered that Mickey Mouse is a dog and did not know the difference of the subtraction question.

5. Next, Cpl. Page asked for McDowell's license, registration, and insurance. McDowell said that he did not have a valid license and could not locate the registration or

2

insurance. When asked only two minutes later what information Cpl. Page had requested, McDowell could not recall. At this time, McDowell stated that he had been driving without a license because he needed to go to the liquor store to buy wine. He also explained that he is "not too slick" and said "I don't think too good." McDowell also said that he had been diagnosed with dementia. Soon, Cpl. Page administered a portable breath test. At 3:33 p.m., Cpl. Page asked McDowell to come with him and placed him in the police car. McDowell was then taken to the police station and charged with driving under the influence. In total, the stop lasted just over 20 minutes.

6. McDowell claims that Cpl. Page's investigation of a possible driving under the influence violation[2] detained him longer than necessary for a community caretaker stop alone, and was an unreasonable seizure under 11 *Del C.* 1902, Article I, Section 6 of the Delaware Constitution, and the Fourth Amendment of the United States Constitution. McDowell also argues that he was subjected to custodial interrogation at the time of the stop but did not receive proper *Miranda* warnings. This Court finds that the initial stop was justified by the community caretaker exception to the Fourth Amendment and that later questioning was supported by a reasonable

_____

[2] In 21 *Del. C.* §4177, it is provided in pertinent part as follows:
(a) No person shall drive a vehicle:
(1) When the person is under the influence of alcohol;
(2) When the person is under the influence of any drug;
(3) When the person is under the influence of a combination of alcohol and any drug;
(4) When the person's alcohol concentration is .08 or more; or
(5) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more. Notwithstanding any other provision of the law to the contrary, a person is guilty under this subsection, without regard to the person's alcohol concentration at the time of driving, if the person's alcohol concentration is, without 4 hours after the time of driving .08 or more and that alcohol concentration is the result of an amount of alcohol present in, or consumed by the person when that person was driving.
* * *
(c) For purposes of subchapter III of Chapter 27 of this title, this section and § 4177B of this title, the following definitions shall apply:
* * *
(5) "Drive" shall include driving, operating, or having actual physical control of a vehicle.
* * *
(11) "While under the influence" shall mean that the person is, because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient, physical control, or due care in the driving of a vehicle.

articulable suspicion of criminal activity. Also, Cpl. Page had probable cause to believe that McDowell had been driving under the influence when he made the arrest. Finally, McDowell was not in custody, making recitation of *Miranda* rights unnecessary.

7. A warrantless search is presumed unreasonable under the Fourth Amendment.[3] However, this presumption can be overcome by showing that a specific exception to the warrant requirement applies.[4] The community caretaker exception was first adopted by the Delaware Supreme Court and explained in *Williams v. State*:

> One exception recognized by many jurisdictions is the non-criminal, non-investigative "community caretaker" or "public safety" doctrine. The doctrine stems from the recognition that "local police have multiple responsibilities, only one of which is the enforcement of criminal law…." The modern police officer is a jack-of-all-emergencies," with "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses; by default or design he is always expected 'to aid individuals who are in danger of physical harm,' 'assist those who cannot care for themselves,' and 'provide other services on an emergency basis.'" To require reasonable suspicion of criminal activity before police can investigate and render assistance in these situations would severely hamstring their ability to protect and serve the public.[5]

The Court went on to state that the community caretaker doctrine has three elements. The elements are explained as follows:

> First, if there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in apparent peril, distress or need of assistance, the police officer may stop and investigate for the purpose of assisting the person. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, the caretaking function is over and any further detention constitutes an unreasonable seizure unless the officer has a warrant, or some exception to the warrant requirement applies, such as reasonable, articulable suspicion of criminal activity.[6]

---

[3] *Williams v. State*, 962 A.2d 210, 216 (Del. 2008).
[4] *Id.*
[5] *Id.* at 216-17.
[6] *Id.* at 219 (citations omitted).

8.      It is clear from the facts of this case that the initial interaction between McDowell and Cpl. Page falls under the community caretaker exception. Cpl. Page observed a disabled vehicle interfering with traffic in the right lane of Route One, a busy highway. He was informed by a bystander that the car had run out of gas. Also, McDowell was wandering around the vicinity of the vehicle, often coming close to moving traffic. These are the objective, specific, and articulable facts that led Cpl. Page to believe that McDowell was in need of assistance. Therefore, it was appropriate for Cpl. Page to stop to render assistance. Lastly, by the time caretaking ceased, Cpl. Page had reasonable suspicion to believe that a crime had been committed, so the stop was not overextended into the realm of unreasonableness.[7]

9.      Once the car had been removed from the right lane of Route One and a tow had been called, the community caretaking exception expired, but, by this time, Cpl. Page had reasonable articulable suspicion to believe that McDowell had been driving under the influence. The transition from a community caretaking stop to an investigatory stop requiring reasonable suspicion is explained in *Moore v. State*. "If while acting as a community caretaker or during a voluntary encounter a police officer 'observes unusual conduct which leads him [or her] reasonably to conclude in light of his [or her] experience that criminal activity may be afoot,' the officer may temporarily stop and detain the person."[8] When considering whether reasonable suspicion exists, "a court must determine whether the 'totality of the circumstances' presented the detaining officer with a 'particularized and objective basis' to conclude that a crime may have been committed or was being committed."[9]

---

[7] Defendant argued that the precedent discussed in *State v. Stanley*, 2015 WL 9010669 (Del. Super. Ct. Dec. 9, 2015) (citing *State v. Caldwell*, 780 A.2d 1037 (Del. 2001)) was applicable in this case. However, *Stanley* and *Caldwell* are inapposite. Those cases found that the defendant was impermissibly seized because the search or investigation took longer than a routine traffic stop. Here, however, the caretaking period was not prolonged and was sufficient for its purpose. During this period, Cpl. Page developed legitimate grounds for a DUI investigation. Thus, McDowell was not detained for longer than necessary and appropriate.

[8] *Moore v. State*, 997 A.2d 656, 666 (Del. 2010) (citations omitted).

[9] *Id.*

10.     By evaluating the totality of the circumstances, it is clear that Cpl. Page had a particularized and objective basis upon which to suspect McDowell had committed a crime (DUI). When Cpl. Page and McDowell were conversing outside of the vehicle and when Cpl. Page was leaning inside the vehicle talking to McDowell, he was able to smell alcohol on McDowell's breath and noticed that his face was flushed and his eyes were glassy. Further, McDowell was unable to tell Cpl. Page how he knew the vehicle had run out of gas. He could only repeat that the car had run out of gas. Finally, Cpl. Page testified that McDowell seemed confused throughout the course of their interaction. These facts, taken together, support the reasonable inference that McDowell was under the influence of alcohol. Therefore, it was permissible for Cpl. Page to continue to question McDowell about his alcohol consumption and to administer field sobriety tests.[10]

11.     Furthermore, it was not necessary for Cpl. Page to administer *Miranda* rights to McDowell during the stop. McDowell argues that his statements that he had a glass of wine prior to driving and that he was driving in order to go buy wine should be excluded as violations of his Fifth Amendment rights. In order for *Miranda* to apply, the person must be in custody at the time of questioning and the questioning must rise to the level of interrogation.[11] In the case at bar, McDowell was not in custody at the time the incriminating statements were made. The Court in *Loper v. State* explained:

> A person is "in custody" when considering the totality of the circumstances, "a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with formal arrest' to such an extent that he would not feel free to leave."[12]

---

[10] It should also be noted that through the course of the investigatory stop, Cpl. Page was supplied with the necessary information to form probable cause to arrest McDowell for driving under the influence. McDowell appeared to be confused and had difficulty answering simple questions regarding from where he was coming and where he had placed the items that he had purchased at the "food store." He also admitted to having drank a glass of wine a half an hour prior to driving and there was a bottle of wine in the passenger's side floor. McDowell was unable to successfully complete any of the field sobriety tests administered by Cpl. Page. These facts are more than sufficient to justify a finding of probable cause.

[11] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[12] *Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010).

The United States Supreme Court has given additional guidance on whether a person is in custody during the course of an ordinary traffic stop. The Court stated in *Berkemer v. McCarty* that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for purposes of *Miranda*."[13] Here, the stop that began as a community caretaker interaction turned into a DUI investigation. While a DUI investigation is more serious than an ordinary traffic stop it does not automatically rise to the level of custodial interrogation. Thus, the incriminating statements made by McDowell are admissible evidence.

12. When Cpl. Page questioned McDowell inside of the disabled vehicle McDowell's movement was not restricted to the degree associated with formal arrest. Cpl. Page testified that he asked McDowell to stay in the car for his own safety, so as to ensure that he would not endanger himself or others by being so close to moving traffic on Route One. McDowell had already demonstrated a propensity to wander around near the roadway. McDowell was not asked to stay in his car because he was under arrest, only for his own safety. This analysis in case is similar to than in *State v. Mauk*. In the Mauk case the defendant was not in custody when questioned at the hospital because she was not formally arrested and "any confinement was caused by her own physical incapacity, not police compulsion."[14] Additionally, the Court favorably cited that the defendant was not placed in handcuffs or any other police restraint.[15] Here, any confinement was caused by concern for McDowell's safety, not police compulsion. Further, McDowell was not handcuffed or restrained in any way. Therefore, it must be concluded that McDowell was not in custody at this time.

---

[13] *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).
[14] *State v. Mauk*, 2014 WL 4942177, at *4 (Del. Super. Ct. Sept. 29, 2014).
[15] *Id.*

13.     Further, *State v. Brotzman* is informative.  The Court stated that when officers arrived at the hospital to speak to the defendant they likely suspected he was the driver of a vehicle that had been involved in a serious car accident in which alcohol was most likely a contributing factor.[16]  However, the Court found that the defendant was not in custody at the time of questioning because "such suspicion does not equate with custodial interrogation, especially when unaccompanied by an unarticulated intent to detain the defendant."[17]  In this case, Cpl. Page suspected that McDowell had been driving under the influence, but, at this point, there was no intent to detain McDowell, other than for his own safety.  Thus, when Cpl. Page was questioning McDowell inside the disabled vehicle, McDowell was not in custody, so there was no need for recitation of *Miranda* rights. McDowell's statements will not be suppressed.

**NOW, THEREFORE,** this 31[th] day of October, 2016, Defendant's Motion to Suppress is **DENIED**.


    **IT IS SO ORDERED.**



    _____
    Richard F. Stokes, Judge


Cc:  Prothonotary
     Nichole Gannett, Esq.
     William B. Wilgus, Esq.

---

[16] *State v. Brotzman*, 1991 WL 138421, at *4 (Del. Super. Ct. July 11, 1991).
[17] *Id.*

8