# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
    )
    )
v.     )     Case I.D. No.: 1710003809
    )
    )
BAKR DILLARD,     )
    )
    Defendant.     )

## ORDER

Submitted: April 30, 2018
Decided: May 17, 2018

*Upon Consideration of State's Motion for Reargument,*
**DENIED.**

**AND NOW TO WIT**, this 17th day of May, 2018, upon consideration of the State's Motion for Reargument and the record in this case, it appears to the Court that:

1. After the Court issued its Opinion and granted suppression in favor of Defendant, the State filed a timely Motion for Reargument on March 23, 2018. Defendant filed a response on April 2, 2018. A hearing on the Motion for Reargument was held on April 30, 2018.

2. The facts underlying the State's Motion for Reargument have been previously described by this Court in its March 16, 2018 Opinion granting

Defendant's Motion to Suppress.[1]

3. The State maintains there was no Fourth Amendment violation in what began as a routine traffic stop and resulted in the Wilmington Police Department ("WPD") officer calling in a drug detection K-9 Unit to conduct a dog sniff of the vehicle that yielded evidence sought to be used against Defendant. The State argues the Fourth Amendment was not implicated because there was no measurable extension of the stop and thus no reasonable articulable suspicion was required by the WPD.

4. The bases for the State's Motion for Reargument are two-fold. First, it argues that this Court misapprehended the facts when it ruled that the officer "detoured" from his mission of issuing the ticket, and thus found that the officer measurably extended the traffic stop into something more. Second, the State argues that because this Court improperly found the existence of a measurable extension, the Court further misapprehended the law by requiring that the officer have reasonable articulable suspicion to justify calling the K-9 Unit. The State contends that no reasonable articulable suspicion was necessary because the officer was still issuing the ticket when the dog sniff occurred. Thus, it argues, had the Court properly applied the facts and the law, it would have denied suppression.

---

[1] *State v. Dillard*, 2018 WL 1382394 (Del. Super. Ct. Mar. 16, 2018).

2

## *Standard of Review*

5.    Delaware Superior Court Criminal Rule 57(d) states: "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule. . . ."[2] "Superior Court Civil Rule 59[ ] is made applicable to criminal cases by Superior Court Criminal Rule 57(d)."[3]

6.    Delaware Superior Court Civil Rule 59(e) permits the Court to reconsider "its findings of fact, conclusions of law, or judgment. . . ."[4] "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[5] To prevail on a motion for reargument, the movant must demonstrate that "the Court has overlooked a controlling precedent or legal principle[ ], or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[6] Further, "[a] motion for reargument is not a device for raising new arguments,"[7] nor is it "intended to rehash the arguments already decided

---

[2] DEL. SUPER. CT. CRIM. R. 57(d).

[3] *Guardarrama v. State*, 911 A.2d 802, 2006 WL 2950494, at *3 (Del. Oct. 17, 2006) (TABLE).

[4] *Hessler Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969). *See* DEL. SUPER. CT. CIV. R. 59(e).

[5] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Ct. Apr. 27, 2007).

[6] *Bd. of Managers of Del. Criminal Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Ct. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003).

[7] *Id.*

3

by the court."[8] Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching finality on the issues.[9] The moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[10]

### *Discussion*

7. This Court determined that the conduct of WPD law enforcement enlarged the boundaries of the ordinary tasks associated with a lawful routine traffic stop such that they prolonged the duration and scope of the traffic stop without reasonable articulable suspicion to justify the seizure (i.e., the second detention.) Specifically, the State takes issue with the ruling and the characterization that "Officer Wilkers *detoured* from his task of issuing the ticket to make the call to Officer Caez and wait for the K-9 Unit to arrive. This Court considers this a measurable extension of the initial stop."[11]

8. The State claims the Court misapprehended facts or mischaracterized the conduct of the officer where there was no such "detour" because the officer was simultaneously calling the K-9 Unit to the scene while working on issuing Defendant

---

[8] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Ct. Jan. 31, 2006).

[9] *See Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Ct. Jan. 14, 2004).

[10] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. Ct. 1995).

[11] *State v. Dillard*, 2018 WL 1382394, at *6 (Del. Super. Ct. Mar. 16, 2018) (emphasis added).

4

his traffic ticket, and the K-9 unit arrived before the officer actually issued the ticket. Thus, the State argues no reasonable articulable suspicion was required.

9. The State re-styles the same unsuccessful argument that this Court rejected in the original Opinion, wherein the Court noted:

> The State's argument that because the officer was expeditiously working on both at the same time and thus no reasonable articulable suspicion was required lacks merit, especially where the officer made his intent clear. Two other officers had already arrived on the scene when Officers decided to call for Officer Caez. The purpose of the call was not to have four officers—and a dog—assist with issuing a traffic ticket.

10. This Court conducted its fact-specific analysis of this stop as to both duration *and* scope and chose the word "detoured," in part, as utilized in the 2015 decision of *Rodriguez v. United States*.[12] The *Rodriguez* Court identifies how "[l]ike a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop."[13] Here, the State fails to establish how the Court misapprehended the facts that the acts of the officer stayed true to the mission of issuing the ticket.

---

[12] *See Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015) (describing how on-scene investigations in to other crimes "detours" from an officer's safety mission).

[13] *Id.* at 1614 (citing *Caballes*, 543 U.S. 406, 407 (2005)). *See also United States v. Sharpe*, 470 U.S. 675, 685 (1985) (when evaluating the scope and duration of an investigative stop, the Court "ha[s] emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes."); *Florida v. Royer*, 460 U.S. 491 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification.").

11.     The facts accepted by the Court included the officer's testimony that he knew before he pulled the vehicle over that he had sufficient information to cite the driver with improper window tint, when he verified that the vehicle registration did not include the proper waiver. The officer testified that Defendant and passenger provided appropriate documents and truthful responses to his questions, and no signs of nervousness were exhibited at any time during his exchange with Defendant.

12.     Rather than return to his vehicle and issue the ticket, the officer asked Defendant to step out of the vehicle to ask him more questions. As noted in its Opinion, the Court analyzed the officer's questioning in detail, and deemed them to be well within the scope of the lawful stop. However, the Court took issue with the third question of whether there was "anything illegal" in the vehicle, distinguishing and questioning the appropriateness of this particular "cart-blanche" question because it was not focused on officer safety or the ordinary questions related to the traffic ticket. Even assuming these were all appropriate questions, the Court further considered the additional command of the officer directing Defendant to sit on the curb, despite the officer's testimony that he did not fear for his safety.

13.     This Court also considered the testimony that the officer knew he was calling in a "Title 16" drug dog when he called the K-9 Unit while he waited for the E-ticket system to load. It took three to five minutes for the K-9 Unit to arrive. K-9 Officer Caez further testified that when he arrived at the scene, he first went to

Officer Wilkers and spoke to him for further direction and then returned to his K-9 vehicle to retrieve his drug dog.[14] Finally, Officer Wilkers testified that he then took the time to speak with and direct and/or assist yet another officer to remove the passenger from the vehicle to facilitate the canine sniff.[15]

14. The Court considered that these independent acts occurred at the command of Officer Wilkers and were wholly unrelated to issuing a ticket for the lawful reason for the stop—improper window tint. That the acts were done prior to the issuing of the ticket does not mean that the stop was not prolonged. The State maintains these acts were constitutionally permissible because where the computer program E-Ticket was still loading, the officer had ample time to pursue other tasks. The excuse of slow technology cannot convert an otherwise unconstitutional, extended detention into a constitutional traffic stop and drug investigation. Thus, this Court found the existence of a measurable extension of the stop. Thus, the Court did not misapprehend the facts.

15. The State also fails to demonstrate how the Court misapprehended the law. The State reiterates that the state actor was merely conducting an efficient

---

[14] Tr. of Suppression Hearing (Feb. 22, 2018) at B72:16–20. Officer Wilkers corroborates this, stating that after Officer Caez arrived at the scene, Officer Wilkers "advised" him as to "what was going on." *Id.* at B43:11–13.

[15] *Id.* at B42:17–B43:11 (after the dog arrived, Officer Wilkers directed Officer Rosado to have the passenger exit the vehicle).

investigation within a permissible timeframe that did not run afoul of the Fourth Amendment, and thus this Court misapprehended the United States decisions in *Rodriguez v. United States* and *Illinois v. Caballes*.[16]

16.    The State's request that the Court follow *Caballes* is inappropriate since this Court already considered *Caballes* and distinguished it from the facts of this case in its Opinion.[17]    It bears repeating that *Caballes* accepted that there was no measurable extension of the stop when the Illinois State Police Drug Interdiction Team arrived with a drug dog upon overhearing the radio transmission of the stop.[18]

17.    Notably, a decade after *Caballes,* the U.S. Supreme Court decision in *Rodriguez* considered and rejected the same argument the State makes here:

> "[t]he Government argues that an officer may 'incremental[ly]' prolong a stop to conduct a dog sniff so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other traffic stops involving similar circumstances.[19]

---

[16] *Rodriguez v. United States*, 135 S.Ct. 1609 (2015); *Illinois v. Caballes*, 543 U.S. 406 (2005). Notably, Justice Ginsburg dissents in *Caballes*, and writes for the majority ten years later in the 2015 decision in *Rodriguez*. *See Caballes*, 543 U.S. at 417–425 (Ginsburg, J. dissenting).

[17] In *Caballes,* there was no evidence to suggest that the interstate highway officer who pulled over the *Caballes* defendant did anything but pull over the driver and begin to issue the speeding ticket, when another officer showed up to the scene with the drug dog. As the Court issued in its Opinion, here, the above-mentioned acts taken by the officer, in addition to calling in the dog, are distinguishable from *Caballes* and thus implicate the Fourth Amendment.

[18] *Caballes*, 543 U.S. at 408 ("[W]e accept the state court's conclusion that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquires incident to such a stop.")

[19] *Rodriguez*, 135 S.Ct. at 1616.

8

The Supreme Court of the United States found that this argument, in effect, was arguing that "by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation."[20] Instead, the Court found that the focus should be on the acts of the individual officer and whether that officially diligently completed the traffic stop, rather than on a specific average duration of a similar traffic stop. The Court stated "[t]he reasonableness of a seizure, however, depends on what the police in fact do. . . . How could diligence be gauged other than by noting what the officer actually did and how he did it?"[21] This Court's Opinion considered what Officer Wilkers actually did and determined that he extended the traffic stop. Indeed, the record and the admission of Officer Wilkers support as much.[22]

18.    Finally, the State fails to demonstrate why an officer does not require reasonable articulable suspicion to call in a drug dog to conduct an independent drug investigation. The State ignores the Delaware authority cited throughout the

---

[20] *Id.*

[21] *Id.* (citing *Knowles v. Iowa*, 525 U.S. 113, 115–17 (1998)).

[22] Defense asked Officer Wilkers, "The time you spent talking to Dillard and the time you spent putting him on the curb, right, and then the time you spent getting in your car and making your radio transmission to Caez, all that time you could have spent logging into E-ticket and issuing, getting ready to issue Dillard a ticket, right?" Officer Wilkers responded, "Yes, sir. Once my thorough investigation was complete." Tr. of Suppression Hearing (Feb. 22, 2018) at B40:04–13.

Opinion that addresses the state and federal constitutional parameters in these traffic stops, and the role of reasonable articulable suspicion if an officer determines that an extension or expansion of the traffic stop is warranted. Here, the Court did not misapprehend the facts in finding that the officer extended the stop. Thus, it relied on the applicable Delaware case law, and the respective analyses germane to these decisions.[23] It accepted that under Delaware law, a "second detention" occurred—a prolonged stop—that required reasonable articulable suspicion, accordingly.

19.     In *Caldwell v. State*, the Delaware Supreme Court identified how "an initially valid traffic stop could not serve as the justifying predicate for the narcotics-related investigation that followed in its immediate wake, notwithstanding the fact that the total length of the stop was brief and did not exceed the normal duration for a traffic stop."[24]

20.     Additionally, in *State v. Stanley*, the State had a similar argument concerning whether there was a measurable extension of the traffic stop. The State argued that there was no measurable extension as long as the K-9 sniff occurred *simultaneously* with another officer explaining a warning citation to the defendant. The Superior Court rejected this reasoning, as the "simple act of removing the

---

[23] *See Caldwell v. State*, 780 A.2d 1037 (Del. 2007); *State v. Chandler*, 132 A.3d 133 (Del. Super. Ct. 2015); *State v. Stanely*, 2015 WL 9010669 (Del. Super. Ct. Dec. 9, 2015).

[24] *Caldwell*, 780 A.2d at 1048 n.24 (quoting *Charity*, 753 A.2d at 566).

occupants from the vehicle extended the traffic stop."[25] As explained in the Court's prior Opinion, an officer may remove passengers from a vehicle for safety purposes.[26] But where an officer does not have safety concerns, as was the case here,[27] even this command can constitute a measurable extension of a traffic stop. Here, this Court accepted that under *Loper*,[28] the Defendant could be ordered to exit his vehicle. The removal of the passenger, however, further aligns with *Stanley* and other factors that weighed in favor of suppression. Thus, this Court followed both federal and Delaware law.

### *Conclusion*

This Court finds that the State moves for reconsideration of conclusions of law by rehashing arguments previously presented, and raising new arguments not properly before this Court per Rule 59. The State fails to meet the heavy burden of demonstrating newly discovered evidence, a change or error of law, or manifest injustice. Specifically, the State fails to demonstrate that this Court overlooked controlling precedent or legal principles when it granted Defendant's Motion to

---

[25] *Stanley*, 2015 WL 9010669, at *4.

[26] *State v. Dillard*, 2018 WL 1382394, at *4 (Del. Super. Ct. Mar. 16, 2018) (describing such an exit command for officer safety as a *de minimis* intrusion).

[27] Indeed, Officer Wilkers did not articulate any safety concerns and did not conduct a patdown of Defendant. Tr. of Suppression Hearing (Feb. 22, 2018) at B16:19–20.

[28] *Loper v. State*, 8 A.3d 1169 (Del. 2010).

11

Suppress. Moreover, this Court did not misapprehend the law or facts such as would change the outcome of the underlying decision. The State's Motion for Reargument is, therefore, **DENIED.**

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc: Prothonotary
cc: Patrick J. Collins, Esquire
Mark A. Denney, Deputy Attorney General
Investigative Services Office