# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,         )
                                     )
        v.                )      C.A. No. 1712001346
                                     )
CONRAD KAMWANI,         )
                                     )
        Defendant.     )

Submitted:  May 18, 2018
Decided:  May 31, 2018

*Upon Defendant Conrad Kamwani's Motion to Suppress*
***DENIED***

Matthew F. Hicks
Deputy Attorney General
State of Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801

Saagar B. Shah, Esquire
704 N. King Street, Suite 600
Wilmington, Delaware 19801

*Attorney for State of Delaware*

*Attorney for Conrad Kamwani*

**DAVIS, J.**

Defendant Conrad Kamwani was arrested and charged with the offense of driving under the influence ("DUI") on December 3, 2017.  Mr. Kamwani thereafter filed a Motion to Suppress (the "Motion") all evidence at trial, including the results of a blood draw taken from Mr. Kamwani to determine his blood alcohol concentration.  The State opposed the Motion.  The Court held an evidentiary hearing on May 11, 2018 (the "Hearing").  At the end of the Hearing, the Court asked the parties to submit additional written argument on the issue of reasonable articulable suspicion.  Mr. Kamwani's counsel filed his letter brief ("Def. Supplement") on May 15, 2018, and the State submitted its letter brief ("State Supplement") on May 18, 2018.

At the Hearing and in the Def. Supplement, Mr. Kamwani concedes Mr. Kamwani cannot factually demonstrate that the field sobriety tests should be suppressed due to lack of voluntariness. Mr. Kamwani also concedes that, even if the HGN field sobriety test were suppressed, the Justice of the Peace Judge had ample evidence to support a finding that probable cause existed to issue a warrant to obtain a sample of Mr. Kamwani's blood for suspicion of committing a DUI. Mr. Kamwani continues to argue that Pfc. Shubra of the Delaware River and Bay Authority Police lacked reasonable articulable suspicion to extend Mr. Kamwani's traffic stop, have Mr. Kamwani exit his car and perform field sobriety tests.

For the reasons set forth below, the Court finds that reasonable articulable suspicion supported Officer Shubra's actions on December 3, 2017. Accordingly, the Motion is **DENIED**.

### BACKGROUND[1]

On December 3, 2017, Mr. Kamwani drove on John F. Kennedy Memorial Highway and across the Delaware Memorial Bridge at approximately 2:20 am. Officer Shubra was on routine patrol in a marked car. Officer Shubra had parked on the New Jersey side of the bridge and was watching traffic coming from New Jersey going to Delaware. Officer Shubra noticed Mr. Kamwani speed past at 85 mph in a 50 mph zone. Officer Shubra entered traffic and pursued Mr. Kamwani. While following Mr. Kamwani's car, Officer Shubra's radar recorded Mr. Kamwani's speed in excess of 95 mph.

After crossing the Delaware Memorial Bridge, Officer Shubra activated his emergency lights and pulled behind Mr. Kamwani. Mr. Kamwani slowed his vehicle and almost came to a complete stop on the highway. Officer Shubra then activated his siren and Mr. Kamwani moved his car to the shoulder of the highway and stopped.

---

[1] Officer Shubra was the only witness at the Hearing. The facts come from the record presented to the Court at the Hearing and through Officer Shubra's testimony.

Officer Shubra approached the vehicle. Officer Shubra noticed that Mr. Kamwani had only partially rolled down his window. In addition, Officer Shubra testified that Mr. Kamwani failed to make eye contact and provided "short, terse and direct answers" to Officer Shubra's questions. Officer Shubra also stated that Mr. Kamwani's speech trailed off and needed to repeat himself so that Officer Shubra could understand the answers.

Mr. Kamwani cooperated with Officer Shubra. Although licensed, Mr. Kamwani did not have his driver's license in his possession. Officer Shubra returned to his marked vehicle and did a background check on Mr. Kamwani. While performing this check, Officer Shubra discovered that Mr. Kamwani has previous convictions for DUIs.

Upon returning to Mr. Kamwani, Officer Shubra asked Mr. Kamwani to step out of his vehicle to perform field sobriety tests. Specifically, Officer Shubra said: "Alright Conrad, can you do me a favor and step out for me? I want to talk to you out here. We're going to run some tests and make sure you're OK to drive home."[2] When Mr. Kamwani exited the vehicle, Officer Shubra smelled alcohol coming from Mr. Kamwani. Officer Shubra testified that Mr. Kamwani's eyes appeared glassy.

Officer Shubra conducted the field sobriety tests. Mr. Kamwani exhibited 6 out of 6 clues of intoxication on the Horizontal Gaze Nystagmus ("HGN") test.[3] On the walk and turn test, Mr. Kamwani exhibited 2 out of 8 possible clues of intoxication. Mr. Kamwani did not exhibit any possible clues of intoxication during the One Leg Stand test.

---

[2] Officer Shubra's vehicle had an operational motor vehicle recorder. The Court was able to observe and hear most of the interaction between Officer Shubra and Mr. Kamwani.

[3] At the Hearing, Mr. Kamwani's counsel objected to the results of the HGN test, arguing that the test was performed in view of passing vehicles which could have created false positives in the testing. The Court's decision regarding reasonable articulable suspicion and probable cause would be the same with or without the results of the HGN test.

Officer Shubra asked Mr. Kamwani if he would take a Portable Breath Test ("PBT"). Officer Shubra testified that he had a calibrated PBT and that he followed standard procedures when administering the PBT. Mr. Kamwani failed the PBT. Officer Shubra placed Mr. Kamwani under arrest for DUI. After placing Mr. Kamwani under arrest, Officer Shubra applied for a warrant to take a blood draw from Mr. Kamwani. The Justice of Peace Court Judge granted the warrant.

The Court viewed the video recording of Mr. Kamwani's traffic stop. The Court also reviewed the warrant issued for the blood draw. Moreover, the Court, as the fact finder, observed Officer Shubra during his testimony. The Court finds that Officer Shubra is a very credible witness. Officer Shubra responded directly to the questions asked and displayed a positive demeanor while testifying. In addition, Officer Shubra's testimony was supported by the video recording.

## ANALYSIS

**APPLICABLE LEGAL STANDARDS**

A traffic stop constitutes a seizure for Fourth Amendment purposes and is subject to constitutional limitations.[4] The State bears the burden of showing that the "stop and any subsequent police investigation were reasonable in the circumstances."[5] First, the stop must be supported by reasonable articulable suspicion that a crime has occurred, is occurring, or is about to occur.[6] Second, the stop and ensuing inquiry must be reasonably related in scope to the reason for initially stopping the car.[7] "[A]ny investigation of the vehicle or its occupants beyond that

---

[4] *Whren v. United States*, 517 U.S. 806, 809 (1996).
[5] *Terry v. Ohio*, 392 U.S. 1, 29 (1968).
[6] *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).
[7] *Jenkins v. State*, 970 A.2d 154, 158 (Del. 2009) (citing *Caldwell v. State*, 780 A.2d 1037 (Del. 2001)).

4

required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by additional facts sufficient to justify the additional intrusion."[8]

To demonstrate reasonable articulable suspicion, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[9] An officer is entitled to use a person's prior criminal history when determining whether reasonable articulable suspicion exists.[10] However, a prior criminal history without more does not constitute reasonable articulable suspicion that a crime has occurred, is occurring or is about to occur.[11] A reviewing court must consider the totality of the circumstances "viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[12]

Under Delaware law "[a] police officer who observes a traffic violation has probable cause to stop the vehicle and its driver."[13] "During a lawful stop, a police officer may order both the driver and passengers out of the vehicle pending completion of the traffic stop."[14] At that point, "all passengers are subject to some scrutiny."[15] The police are permitted to question the driver and/or the passenger about his or her identity and those questions are not outside the scope of a reasonable investigation.[16]

In Delaware, a person operating a motor vehicle on a roadway is "deemed by statute 'to have given consent to chemical tests, including a test of the breath to determine the presence of

---

[8] *Id.*
[9] *State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006).
[10] *Monroe v. State*, 913 A.2d 570, 571 (Del. 2006).
[11] *Id.*
[12] *Henderson,* 892 at 1064-65.
[13] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011); *See also Pennsylvania v. Mimms*, 434 U.S. 106, 107-09 (1977).
[14] *Holden*, 23 A.3d at 847.
[15] *Loper v. State*, 8 A.3d 1169, 1172-73 (Del. 2010).
[16] *Id*. at 1173-74.

alcohol or drugs.'"[17]  Because such testing constitutes a search, a police officer must have probable cause to believe a person was driving under the influence of drugs or alcohol before requiring the person to submit to chemical testing.[18]  An officer has probable cause when the officer has information which would warrant a reasonable man in believing that a crime has occurred.[19]

A blood draw is fundamentally different from a breath sample because it involves an intrusion into the human body.[20]  Because of this, blood draws obtained without a search warrant are *per se* unreasonable absent exigent circumstances or consent.[21]  In a blood draw case, police must have a warrant, exigent circumstances, or valid consent. [22]

The Supreme Court described probable cause as "'an elusive concept which…lies somewhere between suspicion and sufficient evidence to convict.'"[23]  In a driving under the influence situation, probable cause to arrest exists when an officer possesses "'information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed.'"[24]  To meet this standard, the State must:

> 'present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability' that the defendant has committed a DUI offense.  That hypothetically innocent explanations may exist for facts learned during an investigation does not preclude a finding of probable cause.  What is required is that the arresting police officer possess a 'quantum of trustworthy factual information' sufficient to warrant a man of reasonable caution in believing a DUI offense has been committed.[25]

---

[17] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011) (quoting from *Bease v. State*, 884 A.2d 495, 497-98 (Del. 2005)).
[18] *Id.*
[19] *State v. Trager*, 2006 WL 2194764 (Del Super. 2006) (citing *State v. Maxwell*, 624 A.2d 926 (Del. 1993)).
[20] *Skinner v. Railway Labor Exec. Ass'n.*, 489 U.S. 602, 625 (1989).
[21] *See e.g.*, *Flonnory v. State*, 109 A.3d 1060, 1063 (Del. 2015).
[22] *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013).
[23] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011).
[24] *Id.* at 292 (quoting from *Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989)).
[25] *Id.* at 292-93 (quoting from *State v. Maxwell*, 624 A.2d 926, 929 and 930 (Del. 1993)).

No precise formula exists for determining probable cause. Instead, Delaware courts have defined and refined, through a variety of factual contexts, the boundaries of what constitutes probable cause for a DUI offense.[26]

When a blood draw is performed pursuant to a search warrant, Delaware law contemplates a "four corners" test for determining whether the warrant was issued on probable cause.[27] The factual showing in an affidavit necessary to establish probable cause to search is dependent on two factors: (i) probable cause that a crime was committed; and (ii) probable cause to believe that evidence of such crime can be found at the place to be searched.[28]

Delaware courts reviewing a magistrate's probable cause determination must consider whether the affidavit sets forth facts "permitting an impartial judicial officer to reasonably conclude that the items sought would be found at the location."[29] A magistrate's finding of probable cause in this situation should be based on the totality of the circumstances.[30] Therefore, a reviewing court must ensure that the magistrate had a "substantial basis" for concluding that probable cause existed, while in the process giving "great deference" to the issuing magistrate's probable cause determination.[31]

**APPLICATION OF LEGAL STANDARDS TO RELEVANT FACTS**

Officer Shubra had probable cause to stop Mr. Kamwani. Officer Shubra observed Mr. Kamwani driving between 85-95 mph in an area posted with a 50 mph speed limit. Mr. Kamwani committed a traffic violation—speeding—in the presence of Officer Shubra. Under these facts, the Court finds Officer Shubra had probable cause to stop and detain Mr. Kamwani.

---

[26] *Id.* at 293.
[27] *See e.g., Pierson v. State*, 338 A.2d 571, 573–74 (Del. 1975).
[28] *State v. Cannon*, 2007 WL 1849022, at *4 (Del. Super. June 27, 2007).
[29] *Legrande v. State*, 947 A.2d 1103, 1107 (Del. 2008).
[30] *Id.*
[31] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

At this point, even without more facts, Officer Shubra could have ordered Mr. Kamwani out of the vehicle. Officer Shubra was conducting a lawful traffic stop and has the right to order Mr. Kamwani out of his car pending completion of the traffic stop. Officer Shubra did not just order Mr. Kamwani out of the car though. Instead, Officer Shubra conducted a reasonable investigation. Officer Shubra noted that Mr. Kamwani did not lower his window all the way and did not make eye contact. Moreover, Mr. Kamwani responded tersely and quietly. Officer Shubra testified that this was unusual as, during most traffic stops, drivers roll the window down all the way, make eye contact with Officer Shubra, and provide more fulsome answers to the questions asked. Mr. Kamwani did not have his driver's license. Officer Shubra went back to his marked vehicle and pulled up Mr. Kamwani's information. At this point, Officer Shubra noted that Mr. Kamwani had previous DUI convictions.

Officer Shubra testified that he had already determined that he was going to have Mr. Kamwani perform field sobriety tests before Officer Shubra found out that Mr. Kamwani had a DUI history. On direct questioning, Officer Shubra noted that he had developed reasonable articulable suspicion that Mr. Kamwani was driving under the influence even before the background check due to: (i) the high rate of speed; (ii) the way Mr. Kamwani needed to be pulled over (lights and siren); (iii) the way the window was only partially opened; (iv) lack of eye contact; and (v) the way Mr. Kamwani responded to questions.

Whether the previous DUIs factored into the reasonable articulable suspicion analysis or not, the Court finds that Officer Shubra validly extended the traffic stop and properly required Mr. Kamwani to perform field sobriety tests. Clearly, Officer Shubra had more than just the prior DUI history when determining whether reasonable articulable suspicion existed for extending the stop. Officer Shubra had a valid stop for speeding. Officer Shubra had a suspect,

8

Mr. Kamwani, that was acting in suspicious manner given the circumstances. Officer Shubra had the legal right to ask Mr. Kamwani to exit his car (with or without a prior criminal history). Once Mr. Kamwani exited his car, Officer Shubra notice an odor of alcohol and that Mr. Kamwani had glassy eyes. Under these circumstances, the Court finds that Officer Shubra's actions in having Mr. Kamwani perform the field sobriety tests was supported by reasonable articulable suspicion.

The Court also finds that Mr. Kamwani's performance on the field sobriety tests, the odor of alcohol, the glassy eyes, the speeding violation, and the PBT test failure constituted probable cause that Mr. Kamwani had committed a DUI offense. Reviewing the warrant, the Court finds that the Justice of the Peace Judge had a "substantial basis" for concluding that probable cause existed. Accordingly, the Court holds that the warrant to draw blood is valid.

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
**Eric M. Davis, Judge**

9