# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                        )
        v.              )        ID. No. 1508015066
                        )
ERICK COURSEY,          )
                        )
        Defendant.      )

Submitted: June 2, 2016
Decided: June 3, 2016

On Defendant Erick Coursey's Motion to Suppress. **DENIED.**

## <u>ORDER</u>

Phillip M. Casale, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Ross C. Karsnitz, Esquire, Assistant Public Defender, Wilmington, Delaware, Attorney for Defendant Erick Coursey.

**SCOTT, J.**

## Introduction

Before the Court is Defendant Erick Coursey's ("Defendant") Motion to Suppress. Therein, Defendant challenges the validity of a traffic stop and legality of a search warrant, which resulted in evidence and charges against Defendant, as having violated his right against unreasonable searches and seizures of his vehicle and his person guaranteed under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Sections 6 and 7 of Article I of the Delaware Constitution and protected by Title 11, chapter 23 of the Delaware Code. The Court has reviewed and considered the Parties' written submissions, as well as the evidence provided and arguments made by the Parties at the suppression hearing.[1] For the following reasons, Defendant's Motion to Suppress is **DENIED**.

## Findings of Fact[2]

On August 19, 2015, Wilmington Police Officers Gaetan MacNamara ("Ofr. MacNamara") and Brandon Mosley ("Ofr. Mosley") (collectively, "the Officers") were on proactive patrol in the Westside area of the City of Wilmington as part of Operation Disrupt, a proactive patrol initiative targeting high crime areas of the City. At that time, Ofr. MacNamara had been working for the Wilmington Police Department for five years, and Ofr. Mosley had been working for the Wilmington Police Department for three years.

---

[1] Defendant filed his Motion to Suppress on January 4, 2016. The State filed its response on June 1, 2016. The suppression hearing was held on June 2, 2016.

[2] Unless otherwise noted, the findings of facts were made from the testimony of Ofr. MacNamara and Ofr. Mosley, which was provided at the suppression hearing.

At around 10:30 pm on the night in question, the Officers were located near the 100 block of North Van Buren Street when they observed a tan 2008 Nissan Altima pull out of a parking space on the 200 block of North Van Buren Street without signaling. Thereafter, Ofr. Mosley observed the vehicle make a right hand turn from North Van Buren Street onto West 3rd Street without using a turn signal. After observing these motor vehicle violations, the Officers initiated a traffic stop at the 1000 block of West 3rd Street.

The vehicle initially complied with the Officers' traffic stop, and Ofr. Mosley approached the vehicle on the passenger side, after calling in the traffic stop over the radio at 10:33 pm, while Ofr. MacNamara approached the vehicle on the driver's side. As Ofr. MacNamara approached the driver, the driver lowered the rear window, not the driver's side window, which Ofr. MacNamara thought was odd. At that time, Ofr. MacNamara observed that the driver was the only person inside the vehicle, whom he recognized from a few prior community contacts; however, Ofr. Mosley could not see into the vehicle from the passenger side due to the dark window tint.

Upon making contact with the driver, Ofr. MacNamara asked the driver if there were any weapons in the vehicle, and the driver denied same, observing that he was nervous, both hands were shaking, and his voice was quivering as he attempted to speak through the rear window. Ofr. MacNamara became concerned for his safety, because he could not see the driver of his hands through the darkly

2

tinted windows or through the rear window that was down and thought, based on his training and experience, that the driver's behavior was consistent with someone who was hiding something. Therefore, Ofr. MacNamara asked the driver to open the driver's side door, which he did, and to step outside of the vehicle, which the driver refused to do. At this point, the vehicle was still running.

Ofr. Mosley overheard this interaction between the driver and his partner, prompting him to walk around to the driver's side to assist. He observed that the driver's hands were shaking, his heart was beating fast through his chest, and he heard stuttered speech. Again, Ofr. MacNamara asked the driver to step out of the vehicle, which the driver again refused to do. At this point in time, Ofr. Mosley observed that the driver's foot was on the brake pedal with the engine still running, so he asked the driver to turn off the vehicle, which the driver refused to do. Ofr. Mosley then saw the driver move the shifter into the drive gear and proceed to flee the scene in the vehicle down West 3rd Street.

As the driver and vehicle were fleeing the scene, Ofr. MacNamara jumped through the driver's open door onto the driver's lap, where he repeatedly told the driver to put the vehicle in park but the driver did not comply. Ofr. MacNamara, thus, struggled with him to put the vehicle in park as they sped 30 mph down West 3rd Street, where he observed the driver repeatedly attempt to access the center console area of the vehicle. The driver's actions prompted him to fear that Defendant was attempting to access a firearm.

3

At the same time, Ofr. Mosley ran to the patrol car and reported over the radio that the vehicle had taken off, which was recorded in the system at 10:41 pm. He then pursued the fleeing vehicle, where he observed the driver disregard a red light while turning onto North Jackson Street and then turn right onto North 2nd Street, whereupon Ofr. MacNamara was able to take control of the vehicle and bring it to a stop near the 1100 block, after traveling approximately three blocks. The Officers then removed the driver from the vehicle and took him into custody.

Instead of towing the vehicle, Ofr. MacNamara applied for a search warrant authorizing the search of the vehicle for evidence of the possession of a handgun, because his training and experience and observations of Defendant led him to believe that Defendant was concealing contraband inside the center console of the vehicle. After conferring with his partner, Ofr. MacNamara drafted the search warrant and affidavit in support thereof, which stated that the Officers observed Defendant, while operating a tan Nissan Altima, fail to use his turn signals, which caused them to initiate a traffic stop. The affidavit further stated that, though the Defendant denied having any weapons in the vehicle, he then attempted to flee the scene by placing the car into drive, whereupon Ofr. MacNamara entered the operator position of the vehicle and, as the vehicle traveled three blocks, observed Defendant repeatedly attempt to access the center console area of the vehicle. The affidavit concluded by averring that Defendant's actions were consistent with subjects concealing firearms or other contraband inside a vehicle, and that

4

Defendant's prior felony conviction prohibited him from possessing a firearm. The search warrant was issued and received by Ofr. MacNamara that night.

After receiving the signed search warrant, the Officers searched the vehicle, which revealed Defendant's wallet, containing his driver's license, and a semi-automatic handgun in the center console of the vehicle. Both Officers testified that an inventory search was not conducted because a search warrant had issued. Ofr. MacNamara testified that, while it was typically not his practice to have vehicles towed, he was not sure if his partner had requested that the vehicle be towed or not. Ofr. Mosley testified that typically vehicles are towed when the driver is arrested, when the operator's license is suspended or revoked, or when the vehicle is unregistered or its registration is expired, and, had a search warrant not been issued in this case, they would have performed an inventory search of the vehicle.

Both Officers testified that, if a vehicle is towed, they have to perform an inventory search of everything inside the vehicle. Ofr. MacNamara testified that it is departmental policy to do so, and, in this case, they would have searched the center console and found the wallet, driver's license, and firearm. Ofr. Mosley further testified that, in performing the inventory search, he would have had to fill out an inventory sheet, listing all of the items inside the vehicle and that he would have searched the center console.

5

## Parties' Contentions

Defendant argues that the traffic stop constituted an unlawful detention and the search warrant was illegal. Specifically, Defendant contends that the initial traffic stop was not supported by reasonable suspicion and that the scope of the traffic stop was exceeded without justification, when the Officers asked him to step out of the vehicle, because his nervous demeanor alone does not amount to reasonable articulable suspicion sufficient to justify, what he argues amounted to, a second detention, and that Officers were merely prolonging the traffic stop in order to make an unnecessary and unrelated investigation of Defendant. Therefore, any evidence obtained after the unlawful stop and/or subsequent alleged second detention should be suppressed as fruit of the poisonous tree.

Defendant also argues that the search warrant was issued illegally, because the affidavit on which it issued lacks sufficient facts to support a finding of probable cause to believe evidence of a crime would be located in the vehicle. Furthermore, the affidavit conflicts with the police report, in that the police report made no mention of the Officers' observation of Defendant attempting to access the center console area of the vehicle. Therefore, all evidence seized during the search of the vehicle should be suppressed.

The State argues that the officers had sufficient reasonable suspicion to stop the vehicle, based on their direct observations of Defendant's failures to use turn signals in violation of 21 *Del. C.* § 4155, and that, in instructing Defendant to exit

the vehicle, which was based on his failure to comply with instructions, his apparent nervous demeanor, shaking hands, and stuttering, and the fact that his foot remained on the brake pedal, the Officers were merely attempting to complete the initial traffic stop. Thus, it was Defendant's actions that prolonged the initial traffic stop and eventually prevented the Officers from completing it, and, therefore, there was neither a second seizure nor an unlawful extension of the initial traffic stop.

The State also argues that the search warrant was lawfully issued upon affirmation that probable cause existed to search the vehicle for evidence of the possession of a handgun, based on the specific information contained in the affidavit, including that Defendant attempted to flee and repeatedly attempted to access the center console area of the vehicle and that, based on their law enforcement experience, Defendant's actions were consistent with persons concealing firearms and other contraband inside a vehicle.

Lastly, the State argues that, regardless, the firearm would have been inevitably discovered, because Defendant, as the sole occupant of the vehicle, was taken into custody after he willfully fled from the scene of a lawful traffic stop and, thus, the vehicle would have been towed and inventoried. Had the Officers not received a search warrant to search the vehicle, a lawfully administered inventory search of the vehicle would have occurred, which would have revealed Defendant's wallet and license, and the firearm in the center console of the vehicle.

7

## Standard

On a motion to suppress evidence seized during a warrantless search, the State bears the burden of establishing that the challenged search or seizure did not violate the rights guaranteed a defendant by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[3] The burden of proof on a motion to suppress is proof by a preponderance of the evidence.[4]

However, on a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful.[5]

## Discussion

An individual's right to be free from unlawful governmental searches and seizures in Delaware is secured by two independent sources.[6] The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[7] Likewise, Article I, Section 6 of the Delaware Constitution guarantees that "[t]he people shall be secure in their persons, houses,

---

[3] *Hunter v. State*, 783 A.2d 558, 560-61 (Del. 2001).
[4] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010) (citing *State v. Bien-Aime & Smalls*, 1993 WL 138719, at *3 (Del. Super. Mar. 17, 1993).
[5] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).
[6] This right has been codified by title 11, chapter 23 of the Delaware Code. 11 Del. C. § 2301 *et seq.*
[7] U.S. Const. amend. IV. The Fourteenth Amendment makes the Fourth Amendment applicable to the states. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

papers and possessions, from unreasonable searches and seizures . . . ."[8] Searches and seizures are presumptively unreasonable, unless they are authorized by warrants or fall under a recognized exception to the warrant requirement.[9]

Where it is shown that there has been a violation of a defendant's right to be free from illegal searches and seizures, the exclusionary rule acts as the remedy.[10] The rule requires that any evidence recovered or derived from an illegal search and seizure must be excluded from evidence, in the absence of an independent source for or a situation allowing for the inevitably discovery of the evidence.[11]

## A.    The Traffic Stop

A traffic stop is regarded as "a seizure of a vehicle and its occupants by the State," and is only reasonable if supported by reasonable suspicion of criminal activity or probable cause to believe that a traffic violation has occurred. [12] Reasonable suspicion means an officer's ability to point to specific and articulable facts which, combined with all rational inferences, reasonably warrant the intrusion.[13] Each Officer testified at the suppression hearing that he personally observed Defendant fail to use a turn signal, either when he moved his vehicle

---

[8] Del. Const. art. I, § 6.
[9] *Mason v. State*, 534 A.2d 242, 248 (Del. 1987).
[10] *Jones v. State*, 745 A.2d 856, 872 (Del. 1999).
[11] *Id.* (citations omitted).
[12] *Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001); *see Whren v. U.S.*, 517 U.S. 806, 810 (1996); *U.S. v. Brigoni-Ponce*, 422 U.S. 873, 880-81 (1975) (citing *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968)); *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010), *aff'd*, 30 A.3d 782 (Del. 2011).
[13] *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989).

from its parking space on the street or when he turned from North Van Buren Street onto West 3rd Street, each time in violation of Delaware motor vehicle law. Such testimony regarding the Officers' direct observations of Defendant's failure to use a turn signal prior at two separate times constitutes "specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the intrusion," and Defendant has not shown their testimony to be unreliable.[14] Therefore, it appears to the Court that the State has met its burden of showing that the Officers had not only reasonable suspicion to believe that Defendant, as the driver of the vehicle, had just committed an offense, but also probable cause, because they personally observed the traffic violation.[15]

## B.    The Scope of the Traffic Stop

When the Officers ordered Defendant to step out of the vehicle, a second unlawful detention did not occur. While a traffic stop must be justified at its inception by a reasonable suspicion of criminal activity, the scope of the stop must also be reasonably related to the stop's initial purpose.[16] The Delaware Supreme Court held in *Loper v. State* that generally a person already lawfully detained as a

---

[14] The Court notes that, while Defendant argues in his Motion that he did, in fact, use turn signals and is prepared to testify to that fact, at the hearing, he opted not to take the stand. Furthermore, at the hearing, Defendant was allowed great latitude to cross-examine the Officers for credibility purposes; however, it did not appear to the Court that the Officers, who were sequestered and provided consistent testimony in a straightforward fashion, should not otherwise be believed.

[15] *Id.*; *see Cohan v. Simmons*, 2011 WL 379309, at *4 (Del. Super. Jan. 28, 2011) (citing *Rickards*, 2 A.3d at 150 ("Delaware courts have consistently held that where a traffic stop is supported by reasonable suspicion or probable cause that a traffic violation has occurred, the ulterior motive of the police officer is irrelevant.").

[16] *Tann v. State*, 21 A.3d 23, 26 (Del. 2011).

10

result of a valid traffic stop is not seized a second time when ordered to leave his car, because his mobility is already validly limited, relying on *Pennsylvania v. Mimms*, where, after weighing the interest of the driver's personal liberty against the safety of the police officer, the United States Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable search and seizure".[17]

Defendant's argument that *Loper* is distinguishable from the case *sub judice* is unavailing.[18] For our purposes here, in determining whether the traffic stop was unreasonably extended, the pertinent facts in *Loper*, on which the Court relied in determining whether the "delay" was *de minimus* or not, are that the defendant was initially stopped for speeding, which he conceded was a valid traffic stop, that the detention was delayed due to the passenger's arrest, and that the delay amounted to a handful of minutes.[19] Here, Defendant was initially stopped for failing to use turn signals, his detention was delayed due to his refusal to lower his window, turn

---

[17] 8 A.3d 1169, 1174 (Del. 2010) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 107, 111 n.6 (1977)).

[18] At the suppression hearing, Defendant argued at last gasp that *Loper* should be distinguished based on the fact that, in *Loper*, the passenger provided false identification to the officer and had an outstanding warrant for criminal impersonation and drugs were involved. However, these facts were irrelevant to the Court's holding that, based on *Mimms*, simply being ordered out of a vehicle, which is already validly stopped, does not automatically amount to a second seizure, absent any "authority . . . [or] any cogent legal argument, for why this Court should expand the meaning of 'seizure' under *Jones* and Article 1, § 6 of the Delaware Constitution, to hold that a person already being lawfully detained as a result of a valid traffic stop is 'seized' a second time when ordered to leave his car." *Id.* at 1174 (citing *Dunlap v. State*, 2002 WL 31796193, at *2 (Del. 2002); *Caldwell*, 780 A.2d at 1045 n.27).

[19] *Id.* at 1171, 1173.

11

off his vehicle, and step out of the vehicle, and the delay lasted, at most, eight minutes or, as little as, five, as surmised by Defendant. These facts are not distinguishable from those in *Loper*.

Furthermore, even assuming, *arguendo*, that a second seizure occurred when the Officers ordered Defendant to exit the vehicle, under the totality of the circumstances, the Officers were reasonably justified in ordering Defendant out of the car based on Defendant's failure to comply with their directives—to turn off the vehicle and to step out of the vehicle (twice)— and their observations that he was nervous, his hands were shaking, his voice stuttering and that he kept his foot on the brake pedal while the vehicle was running.[20] Therefore, it appears to the Court that the State has met its burden of showing that the Officers did not exceed the scope of the initial traffic stop, because (i) their actions were made in furtherance of completing the initial traffic stop, which Defendant resisted and ultimately prevented in its entirety, and (ii) even if a second seizure did occur, the Officers had reasonable and articulable suspicion, which developed during the infancy of the traffic stop, to justify an additional seizure of Defendant.[21]

---

[20] *See Caldwell*, 780 A.2d at 1047 ("[A]ny investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop must be supported by independent facts sufficient to justify the additional intrusion.").

[21] *Compare Loper*, 8 A.3d at 1175 (holding no second seizure occurred when officers ordered the defendant out of the vehicle after uncontested traffic stop for speeding but finding that, if even a second seizure occurred, it was independently supported by reasonable and articulable suspicion based on the defendant's suspicious responses to the officers questions under the totality of the circumstances)); *with Caldwell*, 780 A.2d at 1049 (finding that second seizure occurred when officers immediately ordered the defendant to exit his vehicle that was illegally parked in a fire

12

## C. The Search Warrant

The search warrant was lawfully issued by a detached and neutral magistrate, because it was sufficiently based on adequate facts in the attached affidavit that demonstrated a fair probability that evidence of a crime would be found within the vehicle.[22] The reviewing court's task is to determine whether the warrant application, on its face, presented the issuing magistrate with a "substantial basis" to reasonably conclude that probable cause existed.[23] "In determining whether probable cause has been demonstrated, there must be a *logical* nexus between the items sought and the place to be searched."[24] In making this determination, the reviewing court takes a deferential approach to the magistrate's determination of probable cause and discourages a "hyper-technical approach to the evaluation of the search warrant affidavit in favor of a common-sense interpretation."[25]

The affidavit attached to the search warrant outlines the initial traffic stop, describes Defendant's actions thereafter, including his decision to flee the scene

---

lane after obtaining his license and registration information because the officer's actions exceeded the permissible scope of the initial traffic stop and that it was unreasonable for want of independent facts to support reasonable and articulable suspicion).

[22] *Legrande v. State*, 947 A.2d 1103 (Del. 2008).

[23] *Illinois v. Gates*, 467 U.S. 213, 239 (1983); *see Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000) ("[S]ufficient facts must appear on the face of the affidavit so that an appellate court can verify the factual basis for the judicial officer's determination regarding the existence of probable case."); *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993) ("A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilty beyond a reasonable doubt or even to prove that guilty is more likely than not.").

[24] *Dorsey*, 761 A.2d at 811.

[25] *Sisson*, 903 A.2d at 296; *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984) (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

and his failure to comply with Ofr. MacNamara's directives, details Ofr. MacNamara's first-hand observations of his repeated attempts to access the center console of the vehicle, and stated that Defendant's actions were consistent, in their extensive law enforcement experience, with subjects attempting to conceal firearms or other contraband inside of a vehicle. Therefore, it appears to the Court that the search warrant was validly issued upon probable cause, as the warrant application included adequate facts from which the magistrate was reasonably able to determine that probable cause for the search of the vehicle for a firearm or other contraband existed.[26]

### D.    Inevitable Discovery

Because the Court has determined that both the traffic stop and search warrant were valid, it does not reach the question of whether the doctrine of inevitable discovery would otherwise apply to prevent suppression of the firearm found in Defendant's vehicle.

---

[26] To the extent that Defendant argues that the affidavit included any false statements, he has not satisfied his burden of making a "substantial preliminary showing that [such statements, if any, were] knowingly and intentionally, or with reckless disregard for the truth, [] included by the affiant in the warrant affidavit" and that "the allegedly false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. Thus, his argument that the affidavit's content is insufficient to establish probable case is without merit, just as his argument that probable cause was lacking on the face of the affidavit fails.

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
**Judge Calvin L. Scott, Jr.**

cc:    Prothonotary