IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    :
                      :    ID No. 1810006157
    v.                :
                      :
MATTHEW D. FROST,     :
                      :
    Defendant.        :


Submitted: February 28, 2019
Decided: March 13, 2019

**ORDER**

Defendant's Motion to Suppress.
*Granted.*


Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Stephanie H. Blaisdell, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for the Defendant.


WITHAM, R.J.

**INTRODUCTION**

Before this Court is Defendant Matthew Frost's ("Defendant" or "Frost") Motion to Suppress. The Defendant moves to suppress all evidence collected subsequent to a traffic stop conducted by the Delaware State Police.

After carefully considering the merits of Frost's motion, the State's response in opposition, and oral arguments made by the parties at the suppression hearing, it appears to the Court that:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. On October 11, 2018, at approximately 1:00 p.m., Delaware State Police Officer First Class Holl (hereinafter "Tfc. Holl") and Corporal Goertz (hereinafter "Cpl. Goertz"), conducted a traffic stop on Route 1, Exit 98. Tfc. Holl had observed the Defendant's vehicle failing to signal before exiting Route 1.

2. Tfc. Holl and Cpl. Goertz both approached the Defendant's vehicle and noted that he was the sole occupant of the vehicle. Tfc. Holl initiated the interaction through the Defendant's passenger side window and Cpl. Goertz stood watch on the driver's side. Tfc. Holl testified that the Defendant moved frantically within the vehicle, including frantically operating his cellular telephone, and exhibited extreme nervousness, much more than a typical motorist stopped for a traffic violation.[1]

3. Tfc. Holl asked the Defendant for the standard documentation required of

---

[1] *See* St. Ex. 1. During his testimony, Tfc. Holl's characterization of the Defendant's behavior was significantly more extreme than the State's previous characterization of the behavior as "nervous." However, the State, nor the video footage shown to the Court, suggested anything comparable to Tfc. Holl's "Richter scale" comparison at the hearing.

all Delaware drivers: license, registration, and proof of insurance. The Defendant immediately produced his license and registration, but was unable to produce any valid proof of insurance via the "GEICO" application on his cellular telephone.[2]

4. While the Defendant attempted to produce his proof of insurance, Tfc. Holl asked the Defendant from where he was traveling and the Defendant stated "North Smyrna" and that he had given "Ashley" a ride home. When pressed for Ashley's last name, the Defendant could not answer, but stated that she was a friend of "Nick's."[3] These vague answers sounded to Tfc. Holl as if the Defendant was creating a story, and those, coupled with his frantic movements, raised his suspicions.

5. At some point during the interaction, Tfc. Holl testified that he observed, in plain view on the passenger car-seat, a small metal blade approximately an inch long by approximately a quarter of an inch wide.[4] Tfc. Holl testified that based on his

---

[2] *See* 21 *Del. C.* 2118(o) (Insurance identification card" shall mean a card issued by or on behalf of an insurance company or bonding company duly authorized to transact business in this State which states in such form as the Insurance Commissioner may prescribe or approve that such company has issued a vehicle insurance policy meeting the requirements of this title. *If the insured and insurance company both consent, the insurance identification card may be produced in electronic format. Acceptable electronic formats include display of electronic images on a cellular phone or any other type of portable electronic device.*) (emphasis added).

[3] Nick was identified by the Defendant as a previous co-worker, whom the Defendant was also unable to identify by last name.

[4] *See* D. Ex. 1. The Court would be remiss if it did not note however that while Tfc. Holl positively identified a picture of the blade, the tip of the blade was cropped from the picture. Defense counsel claimed that this was an accurate depiction of the blade, and despite the State's objection, the Court initially allowed the exhibit only for identification purposes. Only after Tfc. Holl positively identified the blade, and absent a renewed objection from the State, did the Court allow the picture to be admitted. The State did address the cut off tip of the blade in its re-direct examination.

training and experience,[5] this blade specifically, was commonly utilized by heroin users to scrape heroin residue from used heroin packaging.[6]

6. The Defendant was still unable to produce his insurance information after approximately 30 seconds, and Tfc. Holl asked him to step out of the vehicle. The Defendant failed to immediately comply, but remained in the vehicle, and asked if he was being detained. Tfc. Holl said yes and approximately 40 seconds later, the Defendant finally complied and stepped out of the vehicle.

7. Outside of the vehicle, the Defendant was further questioned and disclosed possession of a knife on his person. Tfc. Holl searched the Defendant for additional weapons and discovered approximately $200.00. It was at this point, for the first time, that Tfc. Holl informed the Defendant that he and Cpl. Goertz were going to further search the vehicle because "drug paraphernalia" had been found.[7]

8. Tfc. Holl then inquired if Ashley had left the blade in the car. The Defendant asserted while she had left nothing in the car, she had previously went to "Connections."[8] Tfc. Holl further inquired if the Defendant had anything else was in

---

[5] Tfc. Holl testified that he had attended drug investigation courses run by the Drug Enforcement Administration and the Delaware State Police. He also attended a drug interdiction course and regularly participated in drug investigations as part of his duties with the Delaware State Police.

[6] Tfc. Holl did not reference any heroin residue on the tip during direct examination.

[7] *See* St. Ex. 1. Tfc. Holl explained to the Defendant that the blade was commonly used by heroin users and appeared to have heroin residue on the tip.

[8] Connections began in 1985 as a single program that supported older adults moving from institutionalization into the Delaware community and has expanded since to provide residential,

the vehicle that he should know about and stated "if it is just [the blade], I'm going to chalk it up to 'Ashley.'"[9] The Defendant then disclosed possession of marijuana and marijuana drug paraphernalia.[10]

9. A subsequent search of the vehicle revealed marijuana, 5.9 grams of heroin, and drug paraphernalia.[11]

10. The Defendant was arrested and charged with multiple drug offenses including: (1) 1 count of Drug Dealing, a felony, in violation of 16 *Del. C.* § 4752(1); (2) 1 count of Aggravated Possession, a felony, in violation of 16 *Del. C.* § 4752(3); (3) 1 count of Possession of Drug Paraphernalia, a misdemeanor, in violation of 16 *Del. C.* § 4771(a); and (4) 1 count of Possession of Marijuana, a misdemeanor, in violation of 16 *Del. C.* § 4764(a).

11. The Defendant timely filed this motion to suppress on February 6, 2019 and moved to suppress all evidence seized as a result of the vehicle search. The State's response, in opposition, was timely filed on February 20, 2019. The Court heard the parties' arguments and testimony from Tfc. Holl at the suppression hearing held on February 28, 2019 and reserved its decision.

---

Assertive Community Treatment, and outpatient services for adults with mental illness. *See* http://www.connectionscsp.org/, last accessed Mar. 4, 2019.

[9] *See* St. Ex. 1.

[10] *See* St. Ex. 1; St. Mot. at ¶ 6.

[11] St. Mot. at ¶ 7.

## STANDARD OF REVIEW

12. When presented with a motion to suppress evidence or statements collected in a warrantless search, the State bears the burden of proving, by a preponderance of the evidence, "that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[12] At a suppression hearing, the trial judge sits as the trier of fact, and determines the credibility of witnesses.[13]

## PARTIES' ARGUMENTS

13. The Defendant moves to suppress all evidence collected by Tfc. Holl, characterizing the evidence as *fruit of the poisonous tree*.[14] The Defendant argues that Tfc. Holl had not developed a reasonable, articulable suspicion to justify ordering the Defendant out of the vehicle that extended the traffic stop. The Defendant asserts that this extension was an illegal seizure because he was detained beyond the time that would be required to address the traffic violation.[15]

14. The State, in opposition, argues that Tfc. Holl, based on the totality of the circumstances, had not only a reasonable, articulable suspicion to extend the traffic

---

[12] *State v. Seth*, 2017 WL 2616941, at *2 (Del. Super. June 16, 2017) (citing *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001)). *See also Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[13] *State v. Brinkley*, 2013 WL 1225869, at *2 (Del. Super. Feb. 19, 2013) (citing *Turner v. State*, 957 A.2d 565, 570–71 (Del. 2008).

[14] *See Wong Sun v. United States*, 371 U.S. 471 (1963).

[15] D. Mot. at ¶ 4.

stop, but developed probable cause to search the Defendant's vehicle.[16] The State contends that while the Defendant was lawfully questioned pursuant to 11 *Del. C §* 1902, his conduct, coupled with Tfc. Holl's observation of drug paraphernalia in plain view, established probable cause to extend the Defendant's detention pursuant to *Loper v. State*, to conduct a search of the Defendant's vehicle.[17] Furthermore, the State argued, for the first time at the suppression hearing, that the seized evidence should not be suppressed because it would have been inevitably discovered during an inventory search, since the Defendant would have been prohibited from driving because he failed to produce proof of insurance.

## DISCUSSION

15. An individual's right to be free from unlawful governmental searches and seizures in Delaware is secured by two independent sources. The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...."[18] Likewise, Article I, Section 6 of the Delaware Constitution guarantees that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures...."[19] Searches and seizures are presumptively unreasonable, unless they are authorized by warrants or fall under a

---

[16] St. Reply at ¶ 21.

[17] St. Reply at ¶ 17. *See also Loper v. State*, 8 A.3d 1169 (Del. 2010).

[18] U.S. Const. amend. IV.

[19] Del. Const. art. I, § 6.

recognized exception to the warrant requirement.[20]

16. When a violation of a defendant's right to be free from illegal searches and seizures has been demonstrated, the exclusionary rule is the remedy.[21] As such, evidence recovered illegally must be excluded, in the absence of an independent source for or situation allowing for inevitably discovery.[22]

**A. The Initial Traffic Stop was Lawful**

17. The Court will first focus on the legality of the initial traffic stop. Based on the record, the Court finds that Tfc. Holl had probable cause to conduct a traffic stop concerning the Defendant's vehicle.

18. A traffic stop is regarded as "a seizure of a vehicle and its occupants by the State," and is only reasonable if supported by reasonable, articulable suspicion of criminal activity or probable cause to believe that a traffic violation has occurred.[23]

19. Here, Tfc. Holl testified at the suppression hearing that he observed the Defendant fail to use a turn signal when he exited Route 1 onto Exit 98. This was undisputed by the Defendant. Tfc. Holl's testimony constitutes "specific and articulable facts which taken together with rational inferences from those facts

---

[20] *State v. Coursey*, 136 A.3d 316, 322 (Del. Super. 2016) (citing *Mason v. State*, 534 A.2d 242, 248 (Del.1987).

[21] *Coursey*, 136 A.3d at 322 (citing *Jones v. State*, 745 A.2d 856, 872 (Del. 1999)).

[22] *Id.* (citations omitted).

[23] *Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001).

reasonably warrant the intrusion."[24] Therefore, the Court finds that the State has met its burden of demonstrating that Tfc. Holl had probable cause to conduct the traffic stop because he observed the traffic violation.

### B. The Scope of the Traffic Stop was Exceeded without Probable Cause

*i. The traffic stop was initially extended lawfully due to the Defendant's inability to produce proof of insurance.*

20. In order to be lawful, an officer may detain the individual only as long as necessary to effectuate the purpose of the traffic stop.[25] Police may request the occupants of the car to provide identification,[26] and to exit the vehicle.[27] But, "any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop must be supported by independent facts sufficient to justify the additional intrusion."[28] To justify further detention for questioning on matters unrelated to the initial stop, the officer must have reasonable suspicion that the driver or his passenger has committed, is committing, or is about to commit some other

---

[24] *Coursey*, 136 A.3d at 322 (citing *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989)).

[25] *Brinkley*, 2013 WL 1225869, at *3 (citing *Caldwell*, 780 A.2d at 1047).

[26] *Id.* (citing *Loper v. State*, 8 A.3d 1169, 1172–74 (Del.2010)). *See also* 11 *Del. C. §* 1902 (In Delaware, police officers are permitted to question a person about their "name, address, business abroad, and destination.").

[27] *Id.* (citing *Loper*, 8 A.3d at 1174).

[28] *Id.* (citing Caldwell, 780 A.2d at 1047).

crime.[29] "Reasonable suspicion" is more than an ill-defined hunch; rather, under the totality of the circumstances, the detaining officers must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity."[30]

21. A suspect's nervous behavior and/or odd assertions that he did not know the name of his passenger may or may not, in some situations, provide the officer with reasonable suspicion justifying further limited questioning of the suspect and his passenger.[31] But these facts, standing alone, cannot justify the detention of extended duration and the more intrusive measures like a pat-down search or an officer's use of handcuffs.[32] More "tangible, objectively articulable indicators of criminality, such as driving with a suspended license, failure to provide proof of ownership of the vehicle, or the palpable odor of alcohol, drugs, or air freshener (often used to mask the smell of marijuana and cocaine)" in conjunction with nervousness, may support a finding of reasonable suspicion of criminal activity.[33] Here, the Court finds that

---

[29] *See Huntley*, 777 A.2d at 254 (Del.Super. 2000) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Delaware has adopted a statute which authorizes brief detention for identification purposes of a person who is "abroad" or in a public place when the police officer "has reasonable ground to suspect [that the person] is committing, has committed or is about to commit a crime....". 11 *Del. C. § 1902(a)*. As the language of the statute indicates, a detention must be supported by reasonable suspicion, and where there is no reasonable basis to suspect the detainee has committed any crime, any detention of that defendant is unlawful. *Hicks v. State*, 631 A.2d 6, 9 (Del.1993) (citing *State v. Wrightson*, 391 A.2d 227, 229 (1978)).

[30] *Robertson v. State*, 596 A.2d 1345, 1350 (Del.1991) (citing *Terry*, 392 U.S. at 27)).

[31] *Caldwell*, 780 A.2d at 1050.

[32] *Id.*

[33] *Huntley*, 777 A.2d at 256.

failure to provide a law enforcement officer with proof of insurance, is a tangible, objectively articulable indicator.

22. The State, in opposition, argues that this case is more akin to *Loper v. State*, rather than *Caldwell v. State*. The Court disagrees.

23. In *Loper*, our Supreme Court held that generally speaking, a person already lawfully detained as a result of a valid traffic stop is not seized a second time when ordered to leave his car because his mobility is already validly limited.[34] The *Loper* court relied on *Pennsylvania v. Mimms*,[35] where, after weighing the interest of the driver's personal liberty against the safety of the police officer, the United States Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable search and seizure."[36]

24. For this Court's purposes in determining whether the traffic stop was

---

[34] *Cf. Loper*, 8 A.3d at 1175 (holding no second seizure occurred when officers ordered the defendant out of the vehicle after uncontested traffic stop for speeding but finding that, if even a second seizure occurred, it was independently supported by reasonable and articulable suspicion based on the defendant's suspicious responses to the officers questions under the totality of the circumstances); with *Caldwell*, 780 A.2d at 1049 (finding that second seizure occurred when officers immediately ordered the defendant to exit his vehicle that was illegally parked in a fire lane after obtaining his license and registration information because the officer's actions exceeded the permissible scope of the initial traffic stop and that it was unreasonable for want of independent facts to support reasonable and articulable suspicion).

[35] 434 U.S. 106 (1977).

[36] *Loper*, 8 A.3d at 1174 (citing *Mimms*, 434 U.S. 106-07, 111 n.6).

11

unreasonably extended, the pertinent facts in *Loper*, on which our Supreme Court relied on in determining whether the "delay" was *de minimus* or not, were: (1) the defendant was initially stopped for speeding, which he conceded was a valid traffic stop; (2) that the detention was delayed due to the passenger's arrest; and (3) that the delay amounted to a handful of minutes.[37]

25. In this case, however, the Defendant was initially stopped for failing to use turn signals; for which he conceded. However, his detention was delayed because of his inability to produce proof of insurance and promptly step out of the vehicle when commanded by Tfc. Holl, not any action or inaction on the part of a third party.[38] The case is also distinguished from *Caldwell* because our Defendant lacked proof of insurance. This was an objective factor that, in addition to the defendant's nervousness, the Court finds was sufficient for Tfc. Holl to demonstrate a reasonable, articulable suspicion to extend the traffic stop. Despite the Defendant's assertions that he was attempting to pull up the insurance information electronically, the fact remains that he did not provide proof of insurance after several minutes. Even taking into account the peculiarities regarding cellular telephone signals in some areas of Delaware, it remains the Defendant's responsibility to have proof of insurance readily available, whether it be in paper or electronic form. Thus, the Defendant's inability to produce a valid proof of insurance provided Tfc. Holl with a reasonable, articulable

---

[37] *Id.* at 1171, 1173.

[38] The Court notes that it appears, from the video footage, that the Defendant has, or had, a leg injury. This may have delayed his compliance with Tfc. Holl's instructions to exit the vehicle.

12

basis to extend the traffic stop, beyond issuing a citation for failure to properly signal.

> *ii. Tfc. Holl did not have probable cause to extend the traffic stop further on the belief that the Defendant was in possession of drug paraphernalia.*

26. The Court must now determine whether Tfc. Holl's observance of the nail file in plain view was enough for him to have developed either reasonable, articulable suspicion to further extend the scope of the initial traffic stop, or, in the alternative, probable cause to search the vehicle for additional drugs and drug paraphernalia. After considering the record, the parties' arguments, and Tfc. Holl's testimony at the suppression hearing, the Court finds that the presence of the nail file was not enough for Tfc. Holl to demonstrate probable cause to conduct a warrantless search of the Defendant's vehicle. Thus, the evidence seized as a result of that search must be suppressed.

27. The Defendant argues that the nail file on the car seat was just that, a nail file, which alone, can not be considered drug paraphernalia pursuant to 16 *Del. C. §* 4772. Section 4472 provides thirteen factors that a Court shall evaluate, in addition to other logically-relevant factors, to aid in its determination of whether an object is drug paraphernalia. Those factors are:

(1) Statements by an owner or by anyone in control of the object, concerning its use;

(2) The proximity of the object, in time and space, to a direct violation of this chapter;

(3) The proximity of the object to controlled substances;

13

(4) The existence of any residue of a controlled substance on the object;

(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom the owner knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter. The innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(6) Instructions (oral or written) provided with the object, concerning its use;

(7) Descriptive materials accompanying the object which explain or depict its use;

(8) National and local advertising concerning its use;

(9) The manner in which the object is displayed for sale;

(10) Whether or not the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(11) Direct or circumstantial evidence of the ratio of sales of the suspect object to the total sales of the business enterprise;

(12) The existence and scope of legitimate uses for the object in the community; and

(13) Expert testimony concerning its use.[39]

28. Tfc. Holl testified that he observed brown residue on the nail file that,

---

[39] 16 *Del. C.* § 4772.

based on his experience and training, he believed was heroin. The Court agrees that presence of heroin residue on the nail file would fall under factor four (4) pursuant to section 4772 and, thus, demonstrate probable cause to search the vehicle in an attempt to find other drugs and drug paraphernalia. Indeed, if the Court only considered Tfc. Holl's testimony, then this issue would be easily resolved in favor of the State. In this case, however, the Court is not satisfied that Tfc. Holl had probable cause to search the Defendant's vehicle. In short, the Court questions Tfc. Holl's credibility regarding the alleged drug paraphernalia.

29. First, the Court allowed the photo of the nail file to be admitted into evidence, not withstanding the cropping of the nail file's tip, only after Tfc. Holl had both positively identified it as the nail file he observed and testified that heroin residue was visible on the visible portions of the blade. However, upon observing the exhibit, the Court cannot agree. While the Court would not characterize the nail file as in pristine condition, it can not definitively state that the nail file, as presented, is covered partially by heroin residue. For all the Court knows, there could be another substance on the nail file such as rust or dirt.

30. Second, the Court notes that Tfc. Holl made no reference to heroin residue in the State's direct examination regarding his observation of the nail file in the Defendant's car. Also notable was the State's lack of inquiry into the alleged residue Tfc. Holl testified as to observing.

31. Third, it does not appear to the Court, either from the State's submissions, nor Tfc. Holl's testimony, that any scientific analysis of the alleged heroin residue was conducted. While the Court does not intend to discount Tfc. Holl's training and

experience, the condition of the blade presented to the Court prompts the Court to question why the blade was not analyzed. For no other reason, the nail file should have been tested to verify Tfc. Holl's suspicions.

32. The Court finds, based on the totality of the circumstances, that the nail file, in itself, without confirmation of the presence of heroin residue, or at least, eliminate the possibility that the residue is something more than rust or dirt, was not enough to demonstrate probable cause to search the Defendant's vehicle for other drugs and drug paraphernalia. As a result, the Court finds that Tfc. Holl did not demonstrate probable cause to search the Defendant's vehicle on the basis of drug and drug paraphernalia possession.

> iii. *There was not probable cause to extend the traffic stop on the belief that the Defendant was in possession of weapons.*

33. On re-direct examination, and for the first time, the State appears to implicitly argue that the Defendant's possession of a knife also demonstrated probable cause for the officer's search of the Defendant's vehicle. The Court, however, is not persuaded by this argument.

34. In this case, the video cam footage clearly displays that the Defendant discloses that he has a knife, but it does not appear apparent to the Court what type of knife was confiscated. If, for example, the knife had been a Swiss Army knife, the Court could not conclude that it would establish probable cause to search the vehicle for other weapons. Indeed, the State in its pleadings, nor Tfc. Holl's testimony, appears to argue this point, until the very last moment, after the alleged drug paraphernalia was rebutted by the Defendant. The Court further notes that the State

has not produced the confiscated knife for the Court's consideration, nor focused on its seizure, until the alleged drug paraphernalia was rebutted by the Defendant.

35. As a result, the Court finds, in light of the fact that no knife has been produced as evidence, nor has the argument been directly made by the State, that Tfc. Holl did not have probable cause to search the Defendant's car on the basis that possible weapons might have been found.

## C. The State's Inevitable Discovery Argument

36. Finally, the State argues that the evidence seized in the vehicle search, should be admitted because it would have been inevitably discovered as a result of an inventory search. The Court is not convinced by the State's hypothetical and finds that the inevitable discovery doctrine does not apply to the particular facts of this case.

37. "Inevitable discovery" doctrine provides that evidence obtained unlawfully will be admissible if the State can prove that such evidence would have been discovered in spite of the illegal police conduct.[40]

38. Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment.[41] They are conducted for three purposes: (1) to protect the owner from theft or damage while the vehicle is under police control; (2) to protect

---

[40] *State v. Brownell*, 2005 WL 268043, at *1 (Del. Super. Jan. 28, 2005) (citing *Hardin v. State*, 844 A.2d 982, 987 (Del.2004)).

[41] *State v. Deputy*, 2001 WL 1729120, at *2 (Del.Super.) (citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)).

police from false claims; and (3) to protect police from danger.[42] This Court has further held that inventory searches are lawful when they are "made to safeguard property for the benefit of the owner, police and tow company, and not under pretext to gather evidence without a warrant."[43] The State has the burden to show that an inventory search was conducted in good faith "in furtherance of the police care taking function and not as a pretext for an investigatory motive."[44]

39. This Court dealt with a similar scenario presented in *State v. Brownell*. In *Brownell*, the Delaware State Police responded to an automobile accident and discovered the defendant, who was under the influence of alcohol and/or drugs.[45] Due to the defendant's condition, an officer conducted a limited search of his vehicle, in an attempt to find documentation regarding his license, registration, and insurance status.[46] In the process, however, the officer discovered, removed, and opened a canister that appeared to contain marijuana.[47] The vehicle was subsequently towed and an inventory search was conducted.[48]

40. Upon the defendant's motion to suppress, the State conceded that the initial

---

[42] *Brownell*, 2005 WL 268043, at *1.

[43] *Id.* (citing *Lively v. State*, 427 A.2d 882, 883 (Del. 1981)).

[44] *State v. Miller*, 420 A.2d 181, 184 (Del.Super. 1980).

[45] *Brownell*, 2005 WL 268043 at *1.

[46] *Id.*

[47] *Id.*

[48] *Id.*

18

seizure and opening of the canister was warrantless and improper.[49] The State argued nevertheless that the evidence *would have been* inevitably discovered.[50] This Court agreed with the State's legal argument, but found that the State failed to establish a sufficient record of the inventory search, and thus, failed to meet its burden of establishing that the seizure was lawful.[51]

41. In this case, the Court has no doubt that if an inventory search had taken place, the evidence would have established that the inventory search was conducted properly and lawfully, after the traffic stop. If that inventory search had been established that police procedures had been followed, it is likely that this Court would uphold the seizure and the drugs and drug paraphernalia found would have been admissible.

42. However, rather than establishing some minimum threshold or knowledge base of Tfc. Holl regarding police procedures for an inventory search the State, on re-direct, simply presented Tfc. Holl with a hypothetical situation regarding standard operating procedures *if* the Defendant had been ultimately unable to produce his insurance information. Tfc. Holl testified that if the Defendant was unable to produce his insurance information then: (1) he would not have been permitted the drive the vehicle; (2) the vehicle would have been towed; and (3) an inventory search would

---

[49] *Id.*

[50] *Id.* (Emphasis added.)

[51] *Brownell,* 2005 WL 268043 at *2 (this Court questioned whether the searched information would have been possibly located in a small film canister.).

have been conducted before the vehicle was towed. However, notably absent, as in *Brownell*, was any testimony from Tfc. Holl as to his actual knowledge of those inventory search procedures, testimony as to what those inventory search procedures may entail, or testimony that he was properly trained to conduct such inventory searches.[52]

43.     However, the instant case may be even more egregious, and thus, distinguished from *Brownell* because here there was no attempt by Tfc. Holl, or Cpl. Goertz, to locate the Defendant's proof of insurance.[53] The officers in *Brownell* tried, at least, to ascertain this required documentation.

44.     Furthermore, even if an inventory search had occurred, which it did not,[54] the State would still have failed to provide the Court with an independent basis to find support for an appropriately conducted inventory search because it failed to demonstrate reasonable, articulable suspicion or probable cause for Tfc. Holl to extend the Defendant's traffic stop for a second time. Tfc. Holl's testimony regarding what he would have done if the Defendant had been unable to drive leaves the Court only one option; to conjecture that he *would have conducted* the inventory search correctly. In essence, the State has asked the Court to fill in the blanks using the

---

[52] The Court presumes that all State Police are trained in these matters, but regardless of what the Court may or may not presume, the State must present the foundation for those facts. Here, the State failed to do so.

[53] *See* St. Ex. 1. The Defendant disclosed that he had a knife on his person.

[54] The State conceded, through its presentation of the hypothetical, that there had been no inventory search.

Court's knowledge of an inventory search, which simply is not permissible.

45. That burden is upon the State and not the Court. Here, the State did not meet its burden. As a result, the Court rejects the State's final argument, and finds the inevitable discovery doctrine does not apply to the present case.

## CONCLUSION

46. Therefore, based on the above stated reasons, the Defendant's Motion to Suppress evidence is **GRANTED**. All evidence seized as a result of the search of his vehicle must be suppressed as fruit of the poisonous tree.

**IT IS SO ORDERED**.

_____
Resident Judge

WLW/dmh
oc:   Prothonotary
xc:   Lindsay A. Taylor, Esquire
       Stephanie H. Blaisdell, Esquire