IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,              :
                               :        Case No. 1808018837
v.                             :        Kent County
                               :
GREGORY L. HIXON,              :
                               :
        Defendant.             :


Submitted: May 13, 2019
Decided: May 23, 2019

**ORDER**

Defendant's Motion to Suppress (Vehicle Stop)
*Denied.*


Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Edward C. Gill, Esquire of the Law Office of Edward G. Gill & Associates, Georgetown, Delaware; attorney for the Defendant.


WITHAM, R.J.

**INTRODUCTION**

Before the Court is Defendant Gregory L. Hixon's (hereinafter "Defendant") Motion to Suppress evidence seized as the result of a traffic stop conducted by Delaware State Police.[1] After carefully considering the motion, the State's response in opposition, the record, and the arguments of counsel, it appears to the Court that:

1. On August 24, 2018 at 12:30 a.m., Trooper First Class Solda (hereinafter "Tfc. Solda") observed and recorded via mobile video recorder (hereinafter "MVR"), a 2018 grey Nissan Maxima (hereinafter "Maxima") driving southbound on Route 1 in the vicinity of Dover, Delaware.

2. Tfc. Solda observed the Maxima move to the passing lane without signaling for the minium required distance before he made the lane change.[2]

3. He next observed the Maxima alternate speeds, first increasing speed to over 70 mph in a 60 mph zone and then slowing to 55 mph.[3] Based on his training and experience, in conjunction with the time, Tfc. Solda believed the Maxima was moving erratically and that the driver was possibly driving under the influence.[4]

---

[1] The Court's order only considers Defendant's suppression motion regarding the traffic stop.

[2] St. Reply - Vehicle Stop Ex. A at 12:28:42-45 (Defendant's turn signal is illuminated as he makes the lane change for approximately three seconds and clicks three-to-four times.).

[3] *Id.* at 12:30:19-24 (Tfc. Solda testified that he noted his speed via his speedometer and estimated the Maxima's speed based on that and his gain on the Maxima.).

[4] Tfc. Solda testified that he attended and graduated from the Delaware State Police training academy and was hired by the Delaware State Police in 2015. He testified to having completed other training conducted by the Delaware State Police and other federal, state, and local organizations

4. As the Maxima approached Exit 91, it initiated its right turn signal and began to exit. Instead of fully exiting however, the Maxima suddenly braked and then reentered the lane.[5] However, the Maxima again failed to properly signal.[6]

5. Tfc. Solda illuminated his emergency lights and initiated a traffic stop. At this point, he knew the Maxima was registered in New York but could not report further information to dispatch. As he approached, he shined his flashlight into the Maxima and found Defendant, a black male, was the driver and sole occupant.[7]

6. Tfc. Solda first asked Defendant to put the car in park and then explained why he had conducted the stop. He also requested Defendant's license, registration, and insurance card. Defendant indicated that had none of those documents or any other identification in his possession. Tfc. Solda asked for his name and date of birth and Defendant responded "Stephen Hixon" and stated his birthday as "12/07/89." Tfc. Solda testified Defendant appeared to be stuttering, visibly shaking, and providing

---

pertaining to drug investigations, traffic violations, court proceedings, and DUI investigations. The Court also notes that Tfc. Solda has received numerous commendations during his career and was chosen as the 2018 Delaware State Trooper of the Year for his division.

[5] St. Reply - Vehicle Stop Ex. A at 12:33:21-26.

[6] *Id.*

[7] Tfc. Solda also testified that he observed a tattoo on Defendant's right arm, that there was an odor of marijuana emanating from the Maxima, and that he observed a large amount of currency in the center console.

unclear explanations of his previous travels.[8]

7. As Tfc. Solda walked back to his patrol car to confirm Defendant's identity, he heard a noise from behind and saw a white trash bag thrown from the Maxima.[9] Despite Tfc. Solda's verbal commands, Defendant fled the traffic stop.[10] Tfc. Solda immediately collected the various controlled substances from the bag.

8. Defendant was later arrested and charged with twenty-seven drug and traffic related offenses.[11]

---

[8] Defendant disclosed that he was trying to find Wawa on Route 10 and that the Maxima had been rented by his friend, "Candace Miller." However, Defendant was not in vicinity of Route 10.

[9] St. Reply - Vehicle Stop Ex. A at 12:38:06-09.

[10] *Id.* at 12:38:14-19 (Tfc. Solda ordered Defendant to show his hands and shut the car off.).

[11] Defendant was charged with two counts of Drug Dealing, a felony, in violation of 16 *Del. C.* § 4752(1); ten counts of Drug Dealing, a felony, in violation of 16 *Del. C.* § 4753(2); one count of Disregarding a Police Officer's Signal, a felony, in violation of 21 *Del. C.* § 4103; one count of Tampering with Physical Evidence, a felony, in violation of 11 *Del. C.* § 1269; one count of Possession of Marijuana, a misdemeanor, in violation of 16 *Del. C.* § 4764(a); one count of Criminal Impersonation, a misdemeanor, in violation of 11 *Del. C.* § 907; one count of Resisting Arrest, a misdemeanor, in violation of 11 *Del. C.* § 1257(b); one count of Possession of Drug Paraphernalia, a misdemeanor, in violation of 16 *Del. C.* § 4771(a); one count of Reckless Driving, a misdemeanor, in violation of 21 *Del. C.* § 4175; one count of Failure to have Insurance Identification in Possession; a misdemeanor, in violation of 21 *Del. C.* § 2118; one count of Failure to have Registration Card in Possession, a violation of 21 *Del. C.* § 2108; one count of No Turn Signal utilization, a violation of 21 *Del. C.* § 4155; one count of Improper Lane Change, a violation of 21 *Del. C.* § 4122; one count of Passing on the Right, a violation of 21 *Del. C.* § 4117; one count of Unreasonable Speed, a violation of 21 *Del. C.* § 4168; one count of Failure to have License in Possession, a violation of 21 *Del. C.* § 2721; and one count of Failure to Stop at a Red Light, a violation of 21 *Del. C.* § 4108. However, the Court notes that these charges are a culmination of the chain of events concerning Defendant that involved multiple officers over various areas in Dover. They do not all stem from Tfc. Solda's observations of his driving and the traffic stop.

9. Subsequent to his arrest, Defendant filed a Motion to Suppress evidence on March 29, 2019.[12] The State provided its response, in opposition, on April 8, 2019. A hearing was held on May 13, 2019 and the Court reserved its decision.

## DISCUSSION

10. In his motion, Defendant raises four issues concerning the traffic stop and moves that "all fruits of the illegal and unconstitutional stop and detention of the [D]efendant of August 24, 2018" be suppressed.[13] First, Defendant asserts (without providing evidence) that Tfc. Solda falsified reasonable, articulable suspicion for stopping the Maxima by stating that he suspected Defendant was driving under the influence.[14] Second, Defendant maintains he violated no driving laws.[15] Third, Defendant asserts Tfc. Solda utilized a drug courier profile as the basis for the stop.[16] Finally, Defendant claims he was a victim of racial profiling.[17]

---

[12] Defendant also filed a Motion to Enlarge Time on the same date that was unopposed.

[13] D. Mot. to Suppress - Vehicle Stop (hereinafter "D. Mot. - Vehicle Stop") at ¶ 2.

[14] *Id.* at ¶ 3.

[15] *Id.* at ¶ 4.

[16] *Id.* at ¶ 10; *see also Harris v. State*, 806 A.2d 119, 121 (Del. 2002) (the Delaware Supreme Court held that the detaining officer did not articulate how the defendant's lawful behavior matched the police's drug courier profile characteristics. As a result, the Court found that the detaining officer's belief that the defendant was a drug courier "was more an 'inchoate and unparticularized suspicion or hunch' than a fair inference [and was] simply too slender a reed to support the seizure.)."

[17] *Id.* at ¶ 9 (Defendant appears to state that one of Tfc. Solda's true reasons for pulling him over was that he was a black man driving a car with out of state license plates. He also states that

5

11. The State, in opposition, counters Defendant's assertions by arguing that he did, in fact, commit numerous traffic violations including: (1) speeding; (2) weaving within his lane of traffic, at times crossing the traffic control device lines; and (3) improperly signaling, braking, and reentering the initial travel lane as recorded by the MVR.[18] The State contends those violations created a reasonable, articulable suspicion that Defendant committed traffic offenses, including driving under the influence.[19]

12. On a motion to suppress evidence seized during a warrantless search, the State bears the burden of establishing that the challenged search or seizure did not violate the rights guaranteed a defendant by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[20] The burden of proof is proof by a preponderance of the evidence.[21] However, when a defendant moves to suppress evidence collected pursuant to a warrant, defendant bears the burden of proving by a preponderance of the evidence that the search or seizure violated his guaranteed

---

Tfc. Solda's comments to Defendant that he was conducting a "proactive patrol" indicate that he was profiling Defendant. *See Id.* at ¶¶ 5-9. At the hearing, Defendant formally raised racial profiling.).

[18] St. Reply - Vehicle Stop at ¶ 8.

[19] St. Reply - Vehicle Stop at ¶ 8.

[20] *State v. Coursey*, 136 A.3d 316, 321 (Del. Super. 2016) (citing *Hunter v. State*, 783 A.2d 558, 560–61 (Del. 2001).

[21] *Coursey*, 136 A.3d at 321 (citing *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010) (citations omitted)).

rights.[22]

13. The dispositive issue in this case is whether Defendant utilized a turn signal for at least 300 feet. After thoroughly reviewing the record, the Court finds Defendant did not and Tfc. Solda had probable cause to conduct the traffic stop pursuant to a violation of 21 *Del. C. § 4155*.[23]

14. A police officer may justifiably stop a vehicle that has been observed to have violated a traffic law.[24] The traffic stop is "a seizure of a vehicle and its occupants by the State," and is reasonable if supported by reasonable, articulable suspicion of criminal activity or probable cause to believe that a traffic violation has occurred.[25] An officer's subjective intentions, *if any*, play no role in the Court's determination regarding reasonable, articulable suspicion, or probable cause.[26]

15. Defendant argues he committed no traffic violation. However, after

---

[22] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016) (citing *State v. Palmer*, 2016 WL 2604692, at *3 (Del. Super. May 3, 2016)).

[23] *See* 21 *Del. C. § 4155(b)* (a signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than half a mile traveled by the vehicle *before* turning. (Emphasis added.)).

[24] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Whren*, 517 U.S. at 810).

[25] *Coursey*, 136 A.3d at 323 (Del. Super. 2016) (citing *Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001); *see also Whren v. U.S.*, 517 U.S. 806, 810 (1996); *U.S. v. Brignoni–Ponce*, 422 U.S. 873, 880–81, (1975) (citing *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)); *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010), *aff'd*, 30 A.3d 782 (Del. 2011)).

[26] *State v. Seth*, 2017 WL 2616941 at *3 (Del. Super. Jun. 16, 2017) (citing *Whren*, 517 U.S. at 813).

reviewing the MVR recording, the Court disagrees. In this case, the MVR footage confirms Tfc. Solda's testimony that Defendant improperly changed lanes.[27] Defendant's vehicle is recorded initiating his lane change *as he began to signal*, rather than for the required minimum distance *before initiating the lane change*.

16. Tfc. Solda's personal observation of Defendant's improper lane change on August 24, 2018 justified the traffic stop, and any alleged pretexual reason or motivation on Tfc. Solda's part, *if any*,[28] is irrelevant.[29]

## CONCLUSION

17. As a result, the Court finds that Tfc. Solda had probable cause to conduct a traffic stop on Defendant due to his personal observation of Defendant's improper lane change, a violation of 21 *Del. C.* § 4155.[30] Accordingly, and for the reasons

---

[27] *See* Supra. n.2.

[28] The Court notes that at this point in the litigation, there has been *no evidence presented to the Court that establishes, or even suggests* Tfc. Solda profiled Defendant in any way, shape, or form. *This includes racial profiling.*

[29] *Rickards*, 2 A.3d at 151. *But see also State v. Turner*, 2016 WL 105668, at *2 (Del. Super. Jan. 5, 2016) (citing State *v. Darling*, 2007 WL 1784185, at *3 (Del.Super. June 8, 2007), as corrected (July 3, 2007) (as long as an officer makes a traffic stop based on a violation of the traffic code in his presence, any pretextual reasons or actual motivations that may also be involved in the officer's actions are irrelevant.)).

[30] Because the Court finds probable cause existed to conduct a traffic stop on Defendant, the Court need not review all alleged traffic violations subsequent; reasonable, articulable suspicion to believe that Defendant was driving under the influence; or the arguments regarding racial profiling and/or other pretexual stops.

*State v. Gregory L. Hixon*
Case No. 1808018837
May 23, 2019

mentioned above, Defendant's Motion to Suppress evidence based on the traffic stop

is **DENIED**.

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Lindsay A. Taylor, Esquire
        Edward C. Gill, Esquire